# BACCHUS IMPORTS, LTD., ET AL. *v.* DIAS, DIRECTOR OF TAXATION OF HAWAII, ET AL.

No. 82–1565.   Argued January 11, 1984—Decided June 29, 1984

WHITE, J., delivered the opinion of the Court, in which BURGÉR, C. J., and MARSHALL, BLACKMUN, and POWELL, JJ., joined. STEVENS, J., filed a dissenting opinion, in which REHNQUIST and O'CONNOR, JJ., joined, *post*, p. 278. BRENNAN, J., took no part in the consideration or decision of the case.

*Frank H. Easterbrook* argued the cause for appellants. With him on the briefs were *Allan S. Haley, W. Reece Bader, Robert E. Freitas,* and *James A. Hughes.* *Bruce C. Bigelow* and *Eric K. Yamamoto* filed a brief for Foremost McKesson, Inc., as appellee under this Court's Rule 10.4, in support of appellants.

*William David Dexter*, Special Assistant Attorney General of Hawaii, argued the cause for appellee Dias. With him on the brief were *Tany S. Hong,* Attorney General, *T. Bruce Honda,* Deputy Attorney General, and *Kevin T. Wakayama,* Special Assistant Attorney General.*

---

*Briefs of *amici curiae* urging reversal were filed for the Distilled Spirits Council of the United States, Inc., by *Richard Stair Harrell,*

JUSTICE WHITE delivered the opinion of the Court.

Appellants challenge the constitutionality of the Hawaii liquor tax, which is a 20% excise tax imposed on sales of liquor at wholesale. Specifically at issue are exemptions from the tax for certain locally produced alcoholic beverages. The Supreme Court of Hawaii upheld the tax against challenges based upon the Equal Protection Clause, the Import-Export Clause, and the Commerce Clause. *In re Bacchus Imports, Ltd.*, 65 Haw. 566, 656 P. 2d 724 (1982). We noted probable jurisdiction *sub nom. Bacchus Imports, Ltd.* v. *Freitas*, 462 U. S. 1130 (1983), and now reverse.

## I

The Hawaii liquor tax was originally enacted in 1939 to defray the costs of police and other governmental services that the Hawaii Legislature concluded had been increased due to the consumption of liquor. At its inception the statute contained no exemptions. However, because the legislature sought to encourage development of the Hawaiian liquor industry, it enacted an exemption for okolehao from May 17, 1971, until June 20, 1981, and an exemption for fruit wine from May 17, 1976, until June 30, 1981.[1] Haw. Rev. Stat. §§ 244–4(6), (7) (Supp. 1983). Okolehao is a brandy distilled from the root of the ti plant, an indigenous shrub of Hawaii. *In re Bacchus Imports, Ltd., supra*, at 569, n. 7, 656 P. 2d, at 727, n. 7. The only fruit wine manufactured in Hawaii during the relevant time was pineapple wine. *Id.*, at 570, n. 8, 656 P. 2d, at 727, n. 8. Locally produced sake and fruit liqueurs are not exempted from the tax.

Russell W. Shannon, and Lawrence B. Gotlieb; and for the Wine Institute by Arnold M. Lerman, Daniel Marcus, and Ronald J. Greene.

Eugene F. Corrigan filed a brief for the Multistate Tax Commission as amicus curiae urging affirmance.

[1] An exemption for okolehao that had been enacted in 1960 expired in 1965. 1960 Haw. Sess. Laws, ch. 26, § 1. During the pendency of this litigation, the Hawaii Legislature enacted a similar exemption for rum manufactured in the State for the period May 17, 1981, to June 30, 1986.

Appellants—Bacchus Imports, Ltd., and Eagle Distributors, Inc.—are liquor wholesalers who sell to licensed retailers.[2] They sell the liquor at their wholesale price plus the 20% excise tax imposed by § 244-4, plus a one-half percent tax imposed by Haw. Rev. Stat. § 237-13 (Supp. 1983). Pursuant to Haw. Rev. Stat. § 40-35 (Supp. 1983), which authorizes a taxpayer to pay taxes under protest and to commence an action in the Tax Appeal Court for the recovery of disputed sums, the wholesalers initiated protest proceedings and sought refunds of all taxes paid.[3] Their complaint alleged that the Hawaii liquor tax was unconstitutional because it violates both the Import-Export Clause[4] and the Commerce Clause[5] of the United States Constitution. The wholesalers sought a refund of approximately $45 million, representing all of the liquor tax paid by them for the years in question.[6]

---

[2] Two other taxpayers—Foremost–McKesson, Inc., and Paradise Beverages, Inc.—were appellants in the consolidated suit in the Hawaii Supreme Court. They did not appeal to this Court and thus are appellees here pursuant to our Rule 10.4. For the sake of clarity, both appellants and appellee wholesalers will be referred to collectively as "wholesalers."

[3] Bacchus Imports, Ltd., was the first of the wholesalers to protest the assessment. It sent a letter dated May 30, 1979, protesting the payment of taxes for the period December 1977 through May 1979. Appellee Paradise Beverages, Inc., protested on July 30, 1979, for the period June 1977 through July 1979; appellant Eagle Distributors, Inc., protested on August 31, 1979, taxes paid from August 1974 through July 1979; and, on September 6, 1979, appellee Foremost–McKesson, Inc., protested taxes paid from August 1974 through August 1979. *In re Bacchus Imports, Ltd.*, 65 Haw. 566, 570, n. 11, 656 P. 2d 724, 728, n. 11 (1982).

[4] Article I, § 10, cl. 2, of the Constitution provides in part:

"No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports . . . ."

[5] Article I, § 8, cl. 3, of the Constitution provides in part:

"The Congress shall have power . . . [t]o regulate Commerce with foreign Nations, and among the several States . . . ."

[6] Eagle Distributors sought refund of $10,744,047, App. 7; Bacchus sought $75,060.22, *id.*, at 13; Foremost–McKesson sought over $26 million, *id.*, at 19; and Paradise sought $8,716,727.23, Record in No. 1862, p. 27.

The Tax Appeal Court rejected both constitutional claims. On appeal, the Supreme Court of Hawaii affirmed the decision of the Tax Appeal Court and rejected an equal protection challenge as well. It held that the exemption was rationally related to the State's legitimate interest in promoting domestic industry and therefore did not violate the Equal Protection Clause. 65 Haw., at 573, 656 P. 2d, at 730. It further held that there was no violation of the Import-Export Clause because the tax was imposed on all local sales and uses of liquor, whether the liquor was produced abroad, in sister States, or in Hawaii itself. *Id.*, at 578–579, 656 P. 2d, at 732–733. Moreover, it found no evidence that the tax was applied selectively to discourage imports in a manner inconsistent with federal foreign policy or that it had any substantial indirect effect on the demand for imported liquor. *Ibid.* Turning to the Commerce Clause challenge, the Hawaii court held that the tax did not illegally discriminate against interstate commerce because "incidence of the tax . . . is on wholesalers of liquor in Hawaii and the ultimate burden is borne by consumers in Hawaii." *Id.*, at 581, 656 P. 2d, at 734.

## II

The State presents a claim not made below that the wholesalers have no standing to challenge the tax because they have shown no economic injury from the claimed discriminatory tax. The wholesalers are, however, liable for the tax. Although they may pass it on to their customers, and attempt to do so, they must return the tax to the State whether or not their customers pay their bills. Furthermore, even if the tax is completely and successfully passed on, it increases the price of their products as compared to the exempted beverages, and the wholesalers are surely entitled to litigate whether the discriminatory tax has had an adverse competitive impact on their business. The wholesalers plainly have standing to challenge the tax in this Court.[7]

---

[7] The State also would have us avoid the merits by holding that the exemptions are severable and should not invalidate the entire tax. The

## III

A cardinal rule of Commerce Clause jurisprudence is that "[n]o State, consistent with the Commerce Clause, may 'impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business.'" *Boston Stock Exchange* v. *State Tax Comm'n*, 429 U. S. 318, 329 (1977) (quoting *Northwestern States Portland Cement Co.* v. *Minnesota*, 358 U. S. 450, 458 (1959)). Despite the fact that the tax exemption here at issue seems clearly to discriminate on its face against interstate commerce by bestowing a commercial advantage on okolehao and pineapple wine, the State argues—and the Hawaii Supreme Court held—that there is no improper discrimination.

## A

Much of the State's argument centers on its contention that okolehao and pineapple wine do not compete with the other products sold by the wholesalers.[8] The State relies in part on statistics showing that for the years in question sales of okolehao and pineapple wine constituted well under one percent of the total liquor sales in Hawaii.[9] It also relies on the

argument was not presented to the Supreme Court of Hawaii and that court did not proceed on any such basis. Furthermore, the challenged exemptions have now expired and "severance" would not relieve the harm inflicted during the time the wholesalers' imported products were taxed but locally produced products were not.

[8] The State does not seriously defend the Hawaii Supreme Court's conclusion that because there was no discrimination between in-state and out-of-state *taxpayers* there was no Commerce Clause violation. Our cases make clear that discrimination between in-state and out-of-state goods is as offensive to the Commerce Clause as discrimination between in-state and out-of-state taxpayers. Compare *I. M. Darnell & Son Co.* v. *Memphis*, 208 U. S. 113 (1908), with *Maryland* v. *Louisiana*, 451 U. S. 725 (1981).

[9] The percentage of exempted liquor sales steadily increased from .2221% of total liquor sales in 1976 to .7739% in 1981. App. to Brief for Appellee Dias A–1.

statement by the Hawaii Supreme Court that "[w]e believe we can safely assume these products pose no competitive threat to other liquors produced elsewhere and consumed in Hawaii," *In re Bacchus Imports, Ltd.*, 65 Haw., at 582, n. 21, 656 P. 2d, at 735, n. 21, as well as the court's comment that it had "good reason to believe neither okolehao nor pineapple wine is produced elsewhere." *Id.*, at 582, n. 20, 656 P. 2d, at 735, n. 20. However, neither the small volume of sales of exempted liquor nor the fact that the exempted liquors do not constitute a present "competitive threat" to other liquors is dispositive of the question whether competition exists between the locally produced beverages and foreign beverages;[10] instead, they go only to the extent of such competition. It is well settled that "[w]e need not know how unequal the Tax is before concluding that it unconstitutionally discriminates." *Maryland* v. *Louisiana*, 451 U. S. 725, 760 (1981).

The State's position that there is no competition is belied by its purported justification of the exemption in the first place. The legislature originally exempted the locally produced beverages in order to foster the local industries by encouraging increased consumption of their product. Surely one way that the tax exemption might produce that result is that drinkers of other alcoholic beverages might give up or consume less of their customary drinks in favor of the exempted products because of the price differential that the exemption will permit. Similarly, nondrinkers, such as the maturing young, might be attracted by the low prices of okolehao and pineapple wine. On the stipulated facts in this case, we are unwilling to conclude that no competition exists between the exempted and the nonexempted liquors.

---

[10] The Hawaii Supreme Court's assumption that okolehao and pineapple wine do not pose "a competitive threat" does not constitute a finding that there is no competition whatsoever between locally produced products and out-of-state products, nor do we understand the State to so argue.

270

B

The State contends that a more flexible approach, taking into account the practical effect and relative burden on commerce, must be employed in this case because (1) legitimate state objectives are credibly advanced, (2) there is no patent discrimination against interstate trade, and (3) the effect on interstate commerce is incidental. See *Philadelphia* v. *New Jersey*, 437 U. S. 617, 624 (1978). On the other hand, it acknowledges that where simple economic protectionism is effected by state legislation, a stricter rule of invalidity has been erected. *Ibid.* See also *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U. S. 456, 471 (1981); *Lewis* v. *BT Investment Managers, Inc.*, 447 U. S. 27, 36–37 (1980).

A finding that state legislation constitutes "economic protectionism" may be made on the basis of either discriminatory purpose, see *Hunt* v. *Washington Apple Advertising Comm'n*, 432 U. S. 333, 352–353 (1977), or discriminatory effect, see *Philadelphia* v. *New Jersey, supra.* See also *Minnesota* v. *Clover Leaf Creamery Co., supra*, at 471, n. 15. Examination of the State's purpose in this case is sufficient to demonstrate the State's lack of entitlement to a more flexible approach permitting inquiry into the balance between local benefits and the burden on interstate commerce. See *Pike* v. *Bruce Church, Inc.*, 397 U. S. 137, 142 (1970). The Hawaii Supreme Court described the legislature's motivation in enacting the exemptions as follows:

"The legislature's reason for exempting 'ti root okolehao' from the 'alcohol tax' was to 'encourage and promote the establishment of a new industry,' S. L. H. 1960, c. 26; Sen. Stand. Comm. Rep. No. 87, in 1960 Senate Journal, at 224, and the exemption of 'fruit wine manufactured in the State from products grown in the State' was intended 'to help' in stimulating 'the local fruit wine industry.' S. L. H. 1976, c. 39; Sen. Stand. Comm. Rep. No. 408–76, in 1976 Senate Journal, at

1056." *In re Bacchus Imports, Ltd.*, *supra*, at 573–574, 656 P. 2d, at 730.

Thus, we need not guess at the legislature's motivation, for it is undisputed that the purpose of the exemption was to aid Hawaiian industry. Likewise, the effect of the exemption is clearly discriminatory, in that it applies only to locally produced beverages, even though it does not apply to all such products. Consequently, as long as there is some competition between the locally produced exempt products and nonexempt products from outside the State, there is a discriminatory effect.

No one disputes that a State may enact laws pursuant to its police powers that have the purpose and effect of encouraging domestic industry. However, the Commerce Clause stands as a limitation on the means by which a State can constitutionally seek to achieve that goal. One of the fundamental purposes of the Clause "was to insure . . . against discriminating State legislation." *Welton* v. *Missouri*, 91 U. S. 275, 280 (1876). In *Welton*, the Court struck down a Missouri statute that "discriminat[ed] in favor of goods, wares, and merchandise which are the growth, product, or manufacture of the State, and against those which are the growth, product, or manufacture of other states or countries. . . ." *Id.*, at 277. Similarly, in *Walling* v. *Michigan*, 116 U. S. 446, 455 (1886), the Court struck down a law imposing a tax on the sale of alcoholic beverages produced outside the State, declaring:

> "A discriminating tax imposed by a State operating to the disadvantage of the products of other States when introduced into the first mentioned State, is, in effect, a regulation in restraint of commerce among the States, and as such is a usurpation of the power conferred by the Constitution upon the Congress of the United States."

See also *I. M. Darnell & Son Co.* v. *Memphis*, 208 U. S. 113 (1908).

More recently, in *Boston Stock Exchange* v. *State Tax Comm'n*, 429 U. S. 318 (1977), the Court struck down a New York law that imposed a higher tax on transfers of stock occurring outside the State than on transfers involving a sale within the State. We observed that competition among the States for a share of interstate commerce is a central element of our free-trade policy but held that a State may not tax interstate transactions in order to favor local businesses over out-of-state businesses. Thus, the Commerce Clause limits the manner in which States may legitimately compete for interstate trade, for "in the process of competition no State may discriminatorily tax the products manufactured or the business operations performed in any other State." *Id.*, at 337. It is therefore apparent that the Hawaii Supreme Court erred in concluding that there was no improper discrimination against interstate commerce merely because the burden of the tax was borne by consumers in Hawaii.

The State attempts to put aside this Court's cases that have invalidated discriminatory state statutes enacted for protectionist purposes. See *Minnesota* v. *Clover Leaf Creamery Co.*, *supra*, at 471; *Lewis* v. *BT Investment Managers, Inc.*, *supra*, at 36–37. The State would distinguish these cases because they all involved attempts "to enhance thriving and substantial business enterprises at the expense of any foreign competitors." Brief for Appellee Dias 30. Hawaii's attempt, on the other hand, was "to subsidize nonexistent (pineapple wine) and financially troubled (okolehao) liquor industries peculiar to Hawaii." *Id.*, at 33. However, we perceive no principle of Commerce Clause jurisprudence supporting a distinction between thriving and struggling enterprises under these circumstances, and the State cites no authority for its proposed distinction. In either event, the legislation constitutes "economic protectionism" in every sense of the phrase. It has long been the law that States may not "build up [their] domestic commerce by means of unequal and oppressive burdens upon the industry and business of other States." *Guy* v. *Baltimore*, 100 U. S. 434, 443

(1880). Were it otherwise, "the trade and business of the country [would be] at the mercy of local regulations, having for their object to secure exclusive benefits to the citizens and products of particular States." *Id.*, at 442. It was to prohibit such a "multiplication of preferential trade areas" that the Commerce Clause was adopted. *Dean Milk Co.* v. *Madison*, 340 U. S. 349, 356 (1951). Consequently, the propriety of economic protectionism may not be allowed to hinge upon the State's—or this Court's—characterization of the industry as either "thriving" or "struggling."

We also find unpersuasive the State's contention that there was no discriminatory intent on the part of the legislature because "the exemptions in question were not enacted to discriminate against foreign products, but rather, to promote a local industry." Brief for Appellee Dias 40. If we were to accept that justification, we would have little occasion ever to find a statute unconstitutionally discriminatory. Virtually every discriminatory statute allocates benefits or burdens unequally; each can be viewed as conferring a benefit on one party and a detriment on the other, in either an absolute or relative sense. The determination of constitutionality does not depend upon whether one focuses upon the benefited or the burdened party. A discrimination claim, by its nature, requires a comparison of the two classifications, and it could always be said that there was no intent to impose a burden on one party, but rather the intent was to confer a benefit on the other. Consequently, it is irrelevant to the Commerce Clause inquiry that the motivation of the legislature was the desire to aid the makers of the locally produced beverage rather than to harm out-of-state producers.

We therefore conclude that the Hawaii liquor tax exemption for okolehao and pineapple wine violated the Commerce Clause because it had both the purpose and effect of discriminating in favor of local products.[11]

---

[11] Because of our disposition of the Commerce Clause issue, we need not address the wholesalers' arguments based upon the Equal Protection Clause and the Import-Export Clause.

## IV

The State argues in this Court that even if the tax exemption violates ordinary Commerce Clause principles, it is saved by the Twenty-first Amendment to the Constitution.[12] Section 2 of that Amendment provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

Despite broad language in some of the opinions of this Court written shortly after ratification of the Amendment,[13] more recently we have recognized the obscurity of the legislative history of § 2. See *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U. S. 97, 107, n. 10 (1980). No clear consensus concerning the meaning of the provision is apparent. Indeed, Senator Blaine, the Senate sponsor of the Amendment resolution, appears to have espoused varying interpretations. In reporting the view of

---

[12] We note that the State expressly disclaimed any reliance upon the Twenty-first Amendment in the court below and did not cite it in its motion to dismiss or affirm. Apparently it was not until it prepared its brief on the merits in this Court that it became "clear" to the State that the Amendment saves the challenged tax. See Brief for Appellee Dias 36.

[13] For example, in *State Board of Equalization* v. *Young's Market Co.*, 299 U. S. 59, 62 (1936), the Court stated:

"The plaintiffs ask us to limit this broad command. They request us to construe the Amendment as saying, in effect: The State may prohibit the importation of intoxicating liquors provided it prohibits the manufacture and sale within its borders; but if it permits such manufacture and sale, it must let imported liquors compete with the domestic on equal terms. To say that, would involve not a construction of the Amendment, but a rewriting of it."

The Court went on to observe, however, that a high license fee for importation may "serve as an aid in policing the liquor traffic." *Id.*, at 63.

See also *Mahoney* v. *Joseph Triner Corp.*, 304 U. S. 401, 403 (1938) ("since the adoption of the Twenty-first Amendment, the equal protection clause is not applicable to imported intoxicating liquor"). Cf. *Craig* v. *Boren*, 429 U. S. 190 (1976).

the Senate Judiciary Committee, he said that the purpose of § 2 was "to restore to the States . . . absolute control in effect over interstate commerce affecting intoxicating liquors . . . ." 76 Cong. Rec. 4143 (1933). On the other hand, he also expressed a narrower view: "So to assure the so-called dry States against the importation of intoxicating liquor into those States, it is proposed to write permanently into the Constitution a prohibition along that line." *Id.*, at 4141.

It is by now clear that the Amendment did not entirely remove state regulation of alcoholic beverages from the ambit of the Commerce Clause. For example, in *Hostetter* v. *Idlewild Bon Voyage Liquor Corp.*, 377 U. S. 324, 331–332 (1964), the Court stated:

> "To draw a conclusion . . . that the Twenty-first Amendment has somehow operated to 'repeal' the Commerce Clause wherever regulation of intoxicating liquors is concerned would, however, be an absurd oversimplification."

We also there observed that "[b]oth the Twenty-first Amendment and the Commerce Clause are parts of the same Constitution [and] each must be considered in light of the other and in the context of the issues and interests at stake in any concrete case." *Id.*, at 332. Similarly, in *Midcal Aluminum, supra*, at 109, the Court, noting that recent Twenty-first Amendment cases have emphasized federal interests to a greater degree than had earlier cases, described the mode of analysis to be employed as a "pragmatic effort to harmonize state and federal powers." The question in this case is thus whether the principles underlying the Twenty-first Amendment are sufficiently implicated by the exemption for okolehao and pineapple wine to outweigh the Commerce Clause principles that would otherwise be offended. Or as we recently asked in a slightly different way, "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amend-

ment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies." *Capital Cities Cable, Inc. v. Crisp*, 467 U. S. 691, 714 (1984).

Approaching the case in this light, we are convinced that Hawaii's discriminatory tax cannot stand. Doubts about the scope of the Amendment's authorization notwithstanding, one thing is certain: The central purpose of the provision was not to empower States to favor local liquor industries by erecting barriers to competition. It is also beyond doubt that the Commerce Clause itself furthers strong federal interests in preventing economic Balkanization. *South-Central Timber Development, Inc. v. Wunnicke*, 467 U. S. 82 (1984); *Hughes v. Oklahoma*, 441 U. S. 322 (1979); *Baldwin v. G. A. F. Seelig, Inc.*, 294 U. S. 511 (1935). State laws that constitute mere economic protectionism are therefore not entitled to the same deference as laws enacted to combat the perceived evils of an unrestricted traffic in liquor. Here, the State does not seek to justify its tax on the ground that it was designed to promote temperance or to carry out any other purpose of the Twenty-first Amendment, but instead acknowledges that the purpose was "to promote a local industry." Brief for Appellee Dias 40. Consequently, because the tax violates a central tenet of the Commerce Clause but is not supported by any clear concern of the Twenty-first Amendment, we reject the State's belated claim based on the Amendment.

V

The State further contends that even if the challenged tax is adjudged to have been unconstitutionally discriminatory and should not have been collected from the wholesalers as long as the exemptions for local products were in force, the wholesalers are not entitled to refunds since they did not bear the economic incidence of the tax but passed it on as a separate addi-

tion to the price that their customers were legally obligated to pay within a certain time. Relying on *United States* v. *Jefferson Electric Mfg. Co.*, 291 U. S. 386 (1934), a case involving interpretation of a federal tax refund statute, the State asserts that only the parties bearing the economic incidence of the tax are constitutionally entitled to a refund of an illegal tax. It further asserts that the wholesalers, at least arguably, do not even bear the legal obligation for the tax and that they have shown no competitive injury from the alleged discrimination. The wholesalers assert, on the other hand, that they were liable to pay the tax whether or not their customers paid their bills on time and that if the tax was illegally discriminatory the Commerce Clause requires that the taxes collected be refunded to them. Their position is also that the discrimination has worked a competitive injury on their business that entitles them to a refund.

These refund issues, which are essentially issues of remedy for the imposition of a tax that unconstitutionally discriminated against interstate commerce, were not addressed by the state courts. Also, the federal constitutional issues involved may well be intertwined with, or their consideration obviated by, issues of state law.[14] Also, resolution of those issues, if required at all, may necessitate more of a record than so far has been made in this case. We are reluctant, therefore, to address them in the first instance. Accordingly, we reverse the judgment of the Supreme Court of Hawaii and remand for further proceedings not inconsistent with this opinion.

*So ordered.*

JUSTICE BRENNAN took no part in the consideration or decision of this case.

---

[14] It may be, for example, that given an unconstitutional discrimination, a full refund is mandated by state law.

278

JUSTICE STEVENS, with whom JUSTICE REHNQUIST and JUSTICE O'CONNOR join, dissenting.

Four wholesalers of alcoholic beverages filed separate complaints challenging the constitutionality of the Hawaii liquor tax because pursuant to an exception, since expired, the tax was not imposed on okolehao or pineapple wine in certain tax years.[1] Although only one of them actually sells okolehao and pineapple wine,[2] apparently all four of them are entitled to engage in the wholesale sale of these beverages as well as the various other alcoholic beverages that they do sell. The tax which they challenge is an excise tax amounting to 20 percent of the wholesale price; presumably the economic burden of the tax is passed on to the wholesalers' customers.

Today the Court holds that these wholesalers are "entitled to litigate whether the discriminatory tax has had an adverse competitive impact on their business." *Ante*, at 267. I am skeptical about the ability of the wholesalers to prove that the exemption for okolehao and pineapple wine has harmed their businesses at all, partly because their customers have reimbursed them for the excise tax and partly because they are free to take advantage of the benefit of the exemption by selling the exempted products themselves. Even if some minimal harm can be proved, I am even more skeptical about the possibility that it will result in the multimillion-dollar refund that the wholesalers are claiming. My skepticism

---

[1] Two of the wholesalers Bacchus Imports, Ltd., and Eagle Distributors, Inc., are appellants in this Court; the other two, Paradise Beverages, Inc., and Foremost-McKesson, Inc., are nominally appellees under our Rules, see *ante*, at 266, n. 2, but have filed briefs supporting reversal. All four were parties to the case in the Hawaiian Supreme Court.

[2] As the Supreme Court of Hawaii noted:

"Paradise acknowledges it is a 'beneficiary' of the exemptions from taxation provided by HRS § 244.4 for okolehao and fruit wine produced in Hawaii. It nevertheless maintains the statute is unconstitutional probably because the volume of sales of the exempted products is relatively insubstantial." *In re Bacchus Imports, Ltd.*, 65 Haw. 566, 570, n. 9, 656 P. 2d 724, 727, n. 9 (1982).

concerning the economics of the wholesalers' position is not, however, the basis for my dissent. I would affirm the judgment of the Supreme Court of Hawaii because the wholesalers' Commerce Clause claim is squarely foreclosed by the Twenty-first Amendment to the United States Constitution.[3]

## I

At the outset, it is of critical importance to a proper understanding of the significance of the Twenty-first Amendment in this litigation to note the issues this case does not raise. First, there is no claim that the Hawaii tax is inconsistent with any exercise of the power that Art. I, §8, cl. 3, of the Constitution confers upon the Congress "To regulate Commerce among . . . the several States." The extent to which the Twenty-first Amendment may or may not have placed limits on the ability of Congress to regulate commerce in alcoholic beverages is simply not at issue in this case. Hence, there is no issue concerning the continuing applicability of previously enacted federal statutes affecting the liquor industry.[4] For purposes of analysis, we may assume, arguendo, that the Twenty-first Amendment left the power of Congress entirely unimpaired.[5]

---

[3] As the Court recognizes, the issue whether the Twenty-first Amendment insulates the exemption from invalidation under the Commerce Clause is properly before us, even though it was not argued below. I should add that the wholesalers' specific Equal Protection Clause claim is plainly foreclosed under the Twenty-first Amendment as well, see, e. g., Mahoney v. Joseph Triner Corp., 304 U. S. 401 (1938), and their Import-Export Clause claim is wholly lacking in merit, see, e. g., Department of Revenue v. James B. Beam Distilling Co., 377 U. S. 341 (1964).

[4] See generally Capital Cities Cable, Inc. v. Crisp, 467 U. S. 691 (1984); California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc., 445 U. S. 97 (1980); see also Heublein, Inc. v. South Carolina Tax Comm'n, 409 U. S. 275, 282, n. 9 (1972).

[5] The Commerce Clause operates both as a grant of power to the Congress and a limitation on the power of the States concerning interstate commerce. Congress' power under the Clause, however, is broader than the limitation inherently imposed on the States, and hence we have always

Moreover, there is no claim that the Hawaii tax has impaired interstate commerce that merely passes through the State,[6] or that is destined to terminate at a federal enclave within the State.[7] Nor is there a claim of a due process violation,[8] nor a claim of discrimination among persons, as opposed to goods,[9] nor a claim of an effect on liquor prices outside the State.[10]

The tax is applied to the sale of liquor in the local market that presumably will be consumed in Hawaii. It thus falls squarely within the protection given to Hawaii by the second section of the Twenty-first Amendment, which expressly mentions "delivery or use therein."[11]

## II

Prior to the adoption of constitutional Amendments concerning intoxicating liquors, there was a long history of special state and federal legislation respecting intoxicating liquors and resulting litigation challenging that legislation

---

recognized that some state regulation of interstate commerce is permissible which would be impermissible if Congress acted. *Cooley* v. *Board of Wardens*, 12 How. 299 (1852). Given the dual character of the Clause, it is not at all incongruous to assume that the power delegated to Congress by the Commerce Clause is unimpaired while holding the inherent limitation imposed by the Commerce Clause on the States is removed with respect to intoxicating liquors by the Twenty-first Amendment.

[6] See generally *Department of Revenue* v. *James B. Beam Distilling Co.*, *supra; Carter* v. *Virginia*, 321 U. S. 131 (1944).

[7] See generally *United States* v. *Mississippi Tax Comm'n*, 412 U. S. 363 (1973); *Collins* v. *Yosemite Park & Curry Co.*, 304 U. S. 518 (1938).

[8] See generally *Wisconsin* v. *Constantineau*, 400 U. S. 433 (1971).

[9] See generally *Craig* v. *Boren*, 429 U. S. 190 (1976).

[10] See generally *Seagram & Sons* v. *Hostetter*, 384 U. S. 35 (1966); compare *United States Brewers Assn., Inc.* v. *Rodriquez*, 465 U. S. 1093 (1984) (summarily dismissing appeal from 100 N. M. 216, 668 P. 2d 1093 (1983)), with *Healy* v. *United States Brewers Assn., Inc.*, 464 U. S. 909 (1983) (summarily aff'g 692 F. 2d 275 (CA2 1982)).

[11] See *infra*, at 281.

under the Commerce Clause.[12] The Commerce Clause effectively prevented States from unilaterally banning the local sale of intoxicating liquors from out of state, *Leisy* v. *Hardin*, 135 U. S. 100 (1890), but Congress, acting pursuant to its plenary power under the Commerce Clause, essentially conferred that authority on them, and this Court upheld that exercise of congressional power. *Clark Distilling Co.* v. *Western Maryland R. Co.*, 242 U. S. 311 (1917). The Eighteenth Amendment, ratified in 1919, prohibited the manufacture, sale, and transportation of intoxicating liquors for beverage purposes, and expressly conferred concurrent power to enforce the prohibition on Congress and the several States.[13] Section 1 of the Twenty-first Amendment, ratified in 1933, repealed the Eighteenth Amendment. However, the constitutional authority of the States to regulate commerce in intoxicating liquors did not revert to its status prior to the adoption of these constitutional Amendments; § 2 of the Twenty-first Amendment expressly provides:

> "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

This Court immediately recognized that this broad constitutional language confers power upon the States to regulate commerce in intoxicating liquors unconfined by ordinary limitations imposed on state regulation of interstate goods by the Commerce Clause and other constitutional provisions, *Ziffrin, Inc.* v. *Reeves*, 308 U. S. 132 (1939); *Finch & Co.* v.

---

[12] See, *e. g.*, *United States* v. *Hill*, 248 U. S. 420 (1919); *Clark Distilling Co.* v. *Western Maryland R. Co.*, 242 U. S. 311 (1917); *In re Rahrer*, 140 U. S. 545 (1891); *Leisy* v. *Hardin*, 135 U. S. 100 (1890); *Bowman* v. *Chicago & Northwestern R. Co.*, 125 U. S. 465 (1888); *Walling* v. *Michigan*, 116 U. S. 446 (1886); *License Cases*, 5 How. 504 (1847), overruled, *Leisy* v. *Hardin*, *supra*.

[13] See generally *The National Prohibition Cases*, 253 U. S. 350 (1920).

*McKittrick*, 305 U. S. 395 (1939); *Indianapolis Brewing Co.* v. *Liquor Control Comm'n*, 305 U. S. 391 (1939); *Mahoney* v. *Joseph Triner Corp.*, 304 U. S. 401 (1938); *State Board of Equalization* v. *Young's Market Co.*, 299 U. S. 59 (1936), and we have consistently reaffirmed that understanding of the Amendment, repeatedly acknowledging the broad nature of state authority to regulate commerce in intoxicating liquors, see, *e. g.*, *Capital Cities Cable, Inc.* v. *Crisp*, 467 U. S. 691, 712 (1984); *Craig* v. *Boren*, 429 U. S. 190, 206–207 (1976); *Heublein, Inc.* v. *South Carolina Tax Comm'n*, 409 U. S. 275, 283–284 (1972); *California* v. *LaRue*, 409 U. S. 109, 114–115 (1972); *Seagram & Sons* v. *Hostetter*, 384 U. S. 35, 42 (1966); *Hostetter* v. *Idlewild Bon Voyage Liquor Corp.*, 377 U. S. 324, 330 (1964); *Nippert* v. *Richmond*, 327 U. S. 416, 425 (1946); *United States* v. *Frankfort Distilleries, Inc.*, 324 U. S. 293, 299 (1945).

### III

Today the Court, in essence, holds that the Hawaii tax is unconstitutional because it places a burden on intoxicating liquors that have been imported into Hawaii for use therein that is not imposed on liquors that are produced locally. As I read the text of the Amendment, it expressly authorizes this sort of burden. Moreover, as I read Justice Brandeis' opinion for the Court in the seminal case of *State Board of Equalization* v. *Young's Market Co., supra*, the Court has squarely so decided.

In *Young's Market*, the Court upheld a California statute that imposed a license fee on the privilege of importing beer to any place in California. After noting that the statute would have been obviously unconstitutional prior to the Twenty-first Amendment, the Court explained that the Amendment enables a State to establish a local monopoly and to prevent or discourage competition from imported liquors. Because the Court's reasoning clearly covers this case, it merits quotation at some length:

> "The Amendment which 'prohibited' the 'transportation or importation' of intoxicating liquors into any state

'in violation of the laws thereof,' abrogated the right to import free, so far as concerns intoxicating liquors. The words used are apt to confer upon the State the power to forbid all importations which do not comply with the conditions which it prescribes. The plaintiffs ask us to limit this broad command. They request us to construe the Amendment as saying, in effect: The State may prohibit the importation of intoxicating liquors provided it prohibits the manufacture and sale within its borders; but if it permits such manufacture and sale, it must let imported liquors compete with the domestic on equal terms. To say that, would involve not a construction of the Amendment, but a rewriting of it.

"The plaintiffs argue that, despite the Amendment, a State may not regulate importations except for the purpose of protecting the public health, safety or morals; and that the importer's license fee was not imposed to that end. Surely the State may adopt a lesser degree of regulation than total prohibition. Can it be doubted that a State might establish a state monopoly of the manufacture and sale of beer, and either prohibit all competing importations, or discourage importation by laying a heavy impost, or channelize desired importations by confining them to a single consignee? Compare *Slaughter-House Cases*, 16 Wall. 36; *Vance* v. *W. A. Vandercook Co. (No. 1)*, 170 U. S. 438, 447. There is no basis for holding that it may prohibit, or so limit, importation only if it establishes monopoly of the liquor trade. It might permit the manufacture and sale of beer, while prohibiting hard liquors absolutely. If it may permit the domestic manufacture of beer and exclude all made without the State, may it not, instead of absolute exclusion, subject the foreign article to a heavy importation fee?" 299 U. S., at 62–63.

Today the Court implies that Justice Brandeis' reasoning in the *Young's Market* case has been qualified by our more recent decision in *Hostetter* v. *Idlewild Bon Voyage Liquor*

*Corp., supra.* However, in the passage quoted by the Court, *ante,* at 275, Justice Stewart merely rejected the broad proposition that the Twenty-first Amendment had entirely divested Congress of all regulatory power over interstate or foreign commerce in intoxicating liquors. As I have already noted, this case involves no question concerning the power of Congress, see *supra,* at 279, and n. 4, and Justice Brandeis of course in no way implied that Congress had been totally divested of authority to regulate commerce in intoxicating liquors—a proposition which Justice Stewart characterized as "patently bizarre." 377 U. S., at 332.

Moreover, the actual decision in *Hostetter* was predicated squarely on the principle reflected in the Court's earlier decision in *Collins* v. *Yosemite Park & Curry Co.,* 304 U. S. 518 (1938). Referring to *Collins,* the Court explained:

> "There it was held that the Twenty-first Amendment did not give California power to prevent the shipment into and through her territory of liquor destined for distribution and consumption in a national park. The Court said that this traffic did not involve 'transportation into California "for delivery or use therein"' within the meaning of the Amendment. 'The delivery and use is in the Park, and under a distinct sovereignty.' *Id.,* at 538. This ruling was later characterized by the Court as holding 'that shipment through a state is not transportation or importation into the state within the meaning of the Amendment.' *Carter* v. *Virginia,* 321 U. S. 131, 137." *Hostetter* v. *Idlewild Bon Voyage Liquor Corp.,* 377 U. S., at 332.[14]

---

[14] The Court added:

"A like accommodation of the Twenty-first Amendment with the Commerce Clause leads to a like conclusion in the present case. Here, ultimate delivery and use is not in New York, but in a foreign country. The State has not sought to regulate or control the passage of intoxicants through her territory in the interest of preventing their unlawful diversion into the internal commerce of the State. As the District Court emphasized, this

On the same day that it decided *Hostetter*, the Court also held that a Kentucky tax violated the Export-Import Clause of the Constitution. *Department of Revenue* v. *James B. Beam Distilling Co.*, 377 U. S. 341 (1964). The holding of that case is not relevant to the Commerce Clause issue decided today, but the final paragraph of the Court's opinion in the *James B. Beam Distilling Co.* case surely confirms my understanding that the Court did not then think that it was repudiating the central rationale of Justice Brandeis' opinion in *Young's Market*. It wrote:

> "We have no doubt that under the Twenty-first Amendment Kentucky could not only regulate, but could completely prohibit the importation of some intoxicants, or of all intoxicants, destined for distribution, use, or consumption within its borders. There can surely be no doubt, either, of Kentucky's plenary power to regulate and control, by taxation or otherwise, the distribution, use, or consumption of intoxicants within her territory after they have been imported. All we decide today is that, because of the explicit and precise words of the Export-Import Clause of the Constitution, Kentucky may not lay this impost on these imports from abroad." 377 U. S., at 346.

Indeed, only 11 days ago, we stated that a direct regulation on "the sale or use of liquor" within a State's borders is the "core § 2 power" conferred upon a State, *Capital Cities Cable, Inc.* v. *Crisp*, 467 U. S., at 713, observing:

> "'This Court's decisions . . . have confirmed that the Amendment primarily created an exception to the normal operation of the Commerce Clause.' [Section] 2 reserves

_____

case does not involve 'measures aimed at preventing unlawful diversion or use of alcoholic beverages within New York.' 212 F. Supp., at 386. Rather, the State has sought totally to prevent transactions carried on under the aegis of a law passed by Congress in the exercise of its explicit power under the Constitution to regulate commerce with foreign nations. This New York cannot constitutionally do." 377 U. S., at 333–334.

to the States power to impose burdens on interstate commerce in intoxicating liquor that, absent the Amendment, would clearly be invalid under the Commerce Clause." *Id.*, at 712 (citation omitted).

As a matter of pure constitutional power, Hawaii may surely prohibit the importation of all intoxicating liquors. It seems clear to me that it may do so without prohibiting the local sale of liquors that are produced within the State. In other words, even though it seems unlikely that the okolehao lobby could persuade it to do so, the Hawaii Legislature surely has the power to create a local monopoly by prohibiting the sale of any other alcoholic beverage. If the State has the constitutional power to create a total local monopoly—thereby imposing the most severe form of discrimination on competing products originating elsewhere—I believe it may also engage in a less extreme form of discrimination that merely provides a special benefit, perhaps in the form of a subsidy or a tax exemption, for locally produced alcoholic beverages.

The Court's contrary conclusion is based on the "obscurity of the legislative history" of § 2. *Ante*, at 274. What the Court ignores is that it was argued in *Young's Market* that a "limitation of the broad language" of § 2 was "sanctioned by its history," but the Court, observing that the language of the Amendment was "clear," determined that it was unnecessary to consider the history, 299 U. S., at 63–64—the history which the Court today considers unclear. But now, according to the Court, the force of the Twenty-first Amendment contention in this case is diminished because the "central purpose of the provision was not to empower States to favor local liquor industries by erecting barriers to competition." *Ante*, at 276. It follows, according to the Court, that "state laws that constitute mere economic protectionism are not entitled to the same deference as laws enacted to combat the perceived evils of an unrestricted traffic in liquor." *Ibid.* This is a totally novel approach to

the Twenty-first Amendment.[15]   The question is not one of "deference," nor one of "central purposes";[16] the question is whether the provision in this case is an exercise of a power expressly conferred upon the States by the Constitution.   It plainly is.

Accordingly, I respectfully dissent.

---

[15] It is an approach explicitly rejected in *Young's Market*, 299 U. S., at 63 (rejecting argument that the "State may not regulate importations except for the purpose of protecting the public health, safety or morals . . ."), and in subsequent cases as well, see, *e. g.*, *Seagram & Sons* v. *Hostetter*, 384 U. S., at 47 ("[N]othing in the Twenty-first Amendment . . . requires that state laws regulating the liquor business be motivated exclusively by a desire to promote temperance").   Because it makes the constitutionality of state legislation depend on a judicial evaluation of the motivation of the legislators, I regard it as an unsound approach to the adjudication of federal constitutional issues.   Indeed, it is reminiscent of a long since repudiated era in which this Court struck down assertions of Congress' power to regulate commerce on the ground that the objective of Congress was not to regulate commerce, but rather to remedy some local problem. See generally *Carter* v. *Carter Coal Co.*, 298 U. S. 238 (1936); *Schechter Poultry Corp.* v. *United States*, 295 U. S. 495 (1935); *Railroad Retirement Board* v. *Alton R. Co.*, 295 U. S. 330 (1935).   In any event, the Court's analysis must fall of its own weight, for we do not know what the ultimate result of a regulation such as this may be.   The immediate objective may be to encourage the growth of domestic distilleries, but the ultimate result—or indeed, objective—may be entirely to prohibit imported liquors for domestic consumption when the domestic industry has matured.

[16] I would suggest, however, that if vague balancing of "central purposes" is to govern the ultimate disposition of this litigation, a careful and thorough analysis of the actual economic effect of the tax exemption on the business of the taxpayers should be made before any serious consideration is given to their multimillion-dollar refund claim.