LASSER, P.J.T.C.
Taxpayer contests a sales and use tax deficiency assessment on its purchase and use of various secular books, contending that sales and' use tax may not be imposed on taxpayer during the period in which Bibles were exempt from sales and use tax. Bibles or similar Scripture (Bibles) were exempt from New Jersey sales and use tax until October 1, 1989. Taxpayer contends that the exemption of Bibles violates the First Amendment to the *96 United States Constitution and therefore the Director of the Division of Taxation (Director) cannot impose sales or use tax on secular books during the period in which Bibles are exempt.
Taxpayer is a for-profit New Jersey corporation doing business as Fair Oaks Hospital. A large portion of taxpayer’s business consists of medical services rendered to persons addicted to alcohol and other drugs. Taxpayer purchased both Bibles and secular books in connection with the operation of its business. Some books were purchased by taxpayer for its own use, and many were given to patients as part of their treatment. During the audit period in question, July 1, 1977 through June 30, 1990, taxpayer did not pay sales or use tax under the New Jersey Sales and Use Tax Act, N.J.S.A 54:32B-1 et seq. (the act), on its purchases of books. It contests that part of the deficiency assessment in the amount of $20,619.85 plus penalty and interest imposed by Director on taxpayer for the purchase and use of secular books between July 1, 1977 and September 30, 1989.
On September 25, 1989, Director issued a “Notice to Vendors” which stated that, effective October 1, 1989, the New Jersey sales and use tax exemption for sales of religious books would no longer be allowed. Taxpayer argues that the New Jersey sales and use tax exemption for Bibles is unconstitutional, and relies on Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989), decided February 21,1989, which held that the Texas sales and use tax exemption for sales of religious books and periodicals violates the Establishment Clause of the First Amendment. Taxpayer contends that Director’s failure to retroactively tax Bibles violates taxpayer’s First Amendment rights entitling taxpayer to a retroactive remedy exempting taxpayer’s purchases of secular books for the period prior to October 1, 1989.
The Director has moved for summary judgment, and taxpayer has cross-moved for summary judgment. The facts necessary to decide the issue presented by taxpayer are not in dispute.
*97 The sole issue is whether taxpayer is entitled to a refund of sales and use tax paid to satisfy the deficiency assessment because of the invalidity of the exemption of Bibles and because the United States Supreme Court in McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), required a meaningful backward-looking remedy under the facts of that case.
I.

The Bible Exemption.

New Jersey’s tax exemption for Bibles is codified in N.J.SJL 54:32B-8.25, which states:
Receipts from sales of the Bible or similar sacred scripture of a bona fide church or religious denomination are exempt from the tax imposed under the Sales and Use Tax Act.
In Texas Monthly, supra, the United States Supreme Court held that a Texas statute that provided a broader sales tax exemption for religious books and periodicals[1] violated the First Amendment of the United States Constitution. 489 U.S. at 25, 109 S.Ct. at 905, 103 L.Ed.2d at 20. The Court held that the exemption for publications promulgating the teaching of any religious faith violated the Establishment of Religion Clause of the First Amendment, that the exemption lacked a secular objective which justified conferring a government subsidy on such publications and that the statute had the effect of advancing religion since it effectively endorsed religion, seemingly producing state entanglement with religion. 489 U.S. at 17-18, 109 S.Ct. at 900-01, 103 L.Ed.2d at 14-15.
In Texas Monthly, the Court did not identify a specific remedy, stating:
*98 It is not for us to decide whether the correct response as a matter of state law to a finding that a state tax exemption is unconstitutional is to eliminate the exemption, to curtail it, to broaden it, or to invalidate the tax altogether.
[ 489 U.S. at 8, 109 S.Ct. at 896, 103 L.Ed.2d at 9.]
Hence, the states were left to individually remedy any sales tax exemptions for religious publications rendered unconstitutional by Texas Monthly. In response to Texas Monthly, on September 25,' 1989, the New Jersey Division of Taxation announced that the exemption for sales of Bibles and other sacred Scriptures of a church or religious denomination would not be allowed beginning October 1, 1989. Multi-State Sales Tax Guide (CCH), 1112-600NJ.
II.

The Retroactive Remedy.

In Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), the United States Supreme Court examined the constitutionality of a state liquor tax exemption for locally-produced liquor. In Bacchus, Hawaii imposed an excise tax on wholesale liquor sales. To encourage development of the local liquor industry, brandy and wine distilled from indigenous plants were exempt from tax. Taxpayers, wholesalers of alcoholic beverages, contended that the statutory discrimination resulted in competitive injury to their business and sought a refund of the tax paid. 468 U.S. at 278, 104 S.Ct. at 3058, 82 L.Ed.2d at 213. The Hawaii Supreme Court held that the small volume of sales of exempt liquor did not constitute improper discrimination against interstate commerce. 468 U.S. at 268-69, 104 S.Ct. at 3053-54, 82 L.Ed.2d at 207-08. The United States Supreme Court rejected the state court holding, stating: “[A]s long as there is some competition between the locally produced exempt products and non-exempt products from outside the State, there is [unconstitutional discrimination].” 468 U.S. at 271, 104 S.Ct. at 3055, 82 L.Ed.2d at 209.
The Court, however, was reluctant to address an issue not addressed by the state court and refused to decide the retroactive *99 tax refund issue. 468 U.S. at 278, 104 S.Ct. at 3058, 82 L.Ed.2d at 213. In James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), the United States Supreme Court held that the Bacchus rule of law applied and declared a Georgia excise tax unconstitutional on Commerce Clause grounds, but did not address the issue of retroactive refund of tax.
Six years after Bacchus, the United States Supreme Court decided McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), in which the taxpayer, a licensed wholesale distributor of alcoholic beverages, challenged a Florida statute that provided tax preferences for alcoholic beverages produced from certain products commonly grown in Florida. The taxpayer sought a refund for taxes paid on the ground that the tax violated the Commerce Clause. The Florida Supreme Court held that the tax unconstitutionally discriminated against interstate commerce because it favored local products, but refused to provide the wholesaler with a refund for taxes paid, limiting the remedy to prospective relief. 496 U.S. at 22, 110 S.Ct. at 2242, 110 L.Ed.2d at 26.
In McKesson, the United States Supreme Court defined circumstances under which a taxpayer is entitled to meaningful backward-looking relief:
If a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax’s legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any' unconstitutional deprivation.
[ 496 U.S. at 31, 110 S.Ct. at 2247, 110 L.Ed.2d at 32 (footnotes omitted).]
The McKesson Court recognized that the tax placed the taxpayer at a competitive disadvantage with other licensed wholesale distributors of alcoholic beverages whose products qualified for the tax preferences.
The tax injured [taxpayer] not only because it left [taxpayer] poorer in an absolute sense than before ..., but also because it placed [taxpayer] at a relative disadvantage in the marketplace vis-a-vis competitors distributing preferred local products. To whatever extent [taxpayer] succeeded in passing on the economic incidence of the tax through higher prices to its customers, it most likely lost sales to the *100 favored distributors or else incurred other costs ... in an effort to maintain its market share.
[ 496 U.S. at 48, 110 S.Ct. at 2256, 110 L.Ed.2d at 43 (citation omitted) (footnote omitted).]
The Court discussed the impact of specific state action and the availability of predeprivation protest on taxpayer duress:
[W]hen a tax is paid in order to avoid financial sanctions or a seizure of real or personal property, the tax is paid under “duress” in the sense that the State has not provided a fair and meaningful predeprivation procedure____ In contrast, if a State chooses not to secure payments under duress and instead offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing, payments tendered may be deemed “voluntary.” The availability of a predeprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain if they fail to avail themselves of this procedure.
[ 496 U.S. at 38 n. 21, 110 S.Ct. at 2238 n. 21, 110 L.Ed.2d at 37 n. 21 (citations omitted).]
In McKesson, Florida law subjected taxpayers who failed to timely pay taxes to severe financial sanctions. If a taxpayer failed to pay the tax on time, the state could direct the county sheriff
to levy upon and sell the delinquent tmqpayer’s goods and chattels to recover the amount of the unpaid tax plus a penalty of 50%, along with interest of 1% per month and the costs of executing the warrant. In addition, the [state] may revoke, or decline to renew, a distributor’s license for failure to abide by Florida law, including the statutory requirement that the Liquor Tax be timely paid.
[ 496 U.S. at 38 n. 20, 110 S.Ct. at 2238 n. 21, 110 L.Ed.2d at 36 n. 20 (citations omitted).]
Consequently, the Court found that the taxpayer in McKesson paid the liquor excise tax under duress before its objections to the tax’s legality could be entertained and resolved. Id. at 38-39, 110 S.Ct. at 2251-52, 110 L.Ed.2d at 36-37.
In McKesson, the Court found that the elements required by due process to provide meaningful backward-looking relief were present, (1) the tax was ultimately deemed unconstitutional as impermissibly discriminatory and a permanent unlawful deprivation of property, (2) the taxpayer paid the tax under duress and was relegated to a postpayment challenge, and (3) retroactive relief was required to remedy the taxpayer’s competitive disadvantage, with respect to other liquor wholesalers distributing preferred local products.
*101 The constitutional violation alleged and the injury suffered by taxpayer determines the remedy to which the taxpayer is entitled. In McKesson, the Court found a competitive economic disadvantage that could be remedied in one of two ways. Florida could refund tax paid pursuant to the unconstitutional statute, or the state could require those who benefited from the exemption to pay tax retroactively on sales of alcoholic beverages distilled from locally-grown products.
The Commerce Clause violation is an essential element of the McKesson decision. Meaningful backward-looking relief was necessary to remedy the competitive disadvantage suffered by the taxpayer. In the subject case, taxpayer relies not on Commerce Clause discrimination but on the finding of First Amendment invalidity of the Texas religious publication exemption in Texas Monthly. In the subject case there is no evidence of competitive economic disadvantage. Unlike alcoholic beverages sold by competing liquor wholesalers, there is no evidence in the subject case of competition between secular books and Bibles. There is no competitive disadvantage in the subject case since all hospitals were required to pay tax on the purchase of secular books and until September 30, 1989 were not required to pay tax on Bibles.
In McKesson, there is a connection between the competitive economic disadvantage suffered by the taxpayer and the remedy provided by the Court. In the present case there is no relationship between the alleged injury (payment of tax on secular books when Bibles were exempt) and the tax refund remedy sought. Forgiving sales tax on secular books during the period when Bibles are tax exempt or, in the alternative, requiring purchasers of Bibles to retroactively pay sales tax is an irrelevant remedy. The absence of a competitive relationship between secular books and Bibles makes such a remedy as unjustified as providing for a retroactive tax refund or a retroactive tax payment for purchases of any other item subject to sales tax solely because Bibles are exempt from tax. The tax exemption for Bibles is a separate and severable section of the Sales and Use Tax Act. N.J.S.A. 54:32B-29. If the Bible exemption is violative of the First Amendment, *102 such violation does not invalidate the entire Sales and Use Tax Act.
The First Amendment violation found in the Texas Monthly case does not give rise to McKesson retroactive relief in the subject case because there is no economic disadvantage to be remedied. The exemption granted to Bibles does not give rise to a right not to pay tax on the purchase of secular books.
Further, there is no evidence that taxpayer paid the deficiency assessment under duress due to the State’s failure to provide a fair and meaningful prepayment review procedure. Under the New Jersey Sales and Use Tax Act and the State Tax Uniform Procedure Law, prepayment of tax is not a prerequisite to challenge the validity of a tax. Constitutionality of the tax may be challenged before payment. In this case, taxpayer did not pay the tax upon purchase or use, but only after audit by Director. Taxpayer continued to operate its business without threat or interference by the State. There is no allegation that the State sought revocation or denial of license or registration.
The remedy of retroactive tax refund should be strictly construed because of the need to predict state revenues and to finance the public fisc. See McCullough Transp. Co. v. Div. of Motor Vehicles, 113 N.J.Super. 353, 360, 273 A.2d 786 (App.Div. 1971) (“[limitation periods for claims for refunds are common administrative provisions found in tax legislation and justified by the need for predictability of revenues by public agencies”). Strict Construction of retroactive relief is justified on an equitable basis in this case because taxpayer failed to pay sales and use tax on book purchases over a 13-year period. An audit revealed this failure. Taxpayer seeks a retroactive refund of taxes for the period during which Bibles were exempt, notwithstanding the usual two-year, tax-refund limitation of N.J.S.A 54:49-14, which would have been applicable if taxpayer had paid the tax on a timely basis.
*103 I conclude that meaningful backward-looking relief is an inappropriate remedy not required by McKesson in this case. Taxpayer is not entitled to a retroactive refund of tax paid on the purchase or use of secular publications during the audit period.
Director’s motion for summary judgment is granted, and taxpayer’s motion for summary judgment is denied. The Clerk of the Tax Court is directed to enter judgment dismissing taxpayer’s complaint.

 "Periodicals that are published or distributed by a religious faith and that consist wholly of writings promulgating the teaching of the faith and books that consist wholly of writings sacred to a religious faith" are exempt from Texas sales tax. 489 U.S. at 5, 109 S.Ct. at 894, 103 L.Ed.2d at 7.