**CAMPEAU CORPORATION, et al., Plaintiffs,**

v.

**FEDERATED DEPARTMENT STORES, et al., Defendants.**

Civ. No. C–1–88–147.

United States District Court, S.D. Ohio, W.D.

Feb. 22, 1988.

Joseph Parker, Cincinnati, Ohio, for plaintiffs.

John Chester, Mary Kirchner, Columbus, Ohio, for defendants.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, Chief Judge.

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction and on Defendant Federated Department Stores, Inc.'s Motion for Preliminary Injunction and upon argument and memoranda presented to the Court. After a hearing on February 12, 1988 on Plaintiffs' Motion for a Temporary Restraining Order, the Court granted a Temporary Restraining Order to preserve the status quo until February 18, 1988 when the Court could hear the motions for preliminary injunction. That Temporary Restraining Order was subsequently extended to 12:00 Noon on February 22, 1988.

The issue for consideration is the asserted unconstitutionality of the Ohio Foreign Business Acquisitions Act, *Ohio Revised Code* §§ 1710.01—1710.05. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court does submit herewith its Findings of Fact, Opinion and Conclusions of Law.

### FINDINGS OF FACT

1. On January 25, 1988, Campeau Corporation (Campeau), a Canadian corporation, through its wholly owned subsidiary, CRTF Corporation (CRTF), a New York corporation, commenced a tender offer for stock of Federated Department Stores, Inc. (Federated), a Delaware corporation.

2. On February 12, 1988, the Governor of Ohio signed into law the Ohio Foreign Business Acquisitions Act (the Act) to regulate acquisition of control of a "resident business" by a "foreign business". That same day, Campeau and CRTF filed this action challenging the constitutionality, on its face, of the Act and requesting that Defendants be enjoined from invoking the Act in conjunction with Campeau's tender offer for Federated.

3. Ohio Revised Code § 1710.01 is the definitional section of the Act and provides in pertinent part:

(A)(1) "Foreign Business" means, except as provided in Division (A)(2) of this section, any person that is not a United States citizen or that is organized under or governed by the laws of any country

or territory except those of the United States.

(2) "Foreign Business" does not include any person described in division (A)(1) of this section that, at the time of the commencement of a proposed acquisition of control and for more than one year prior to that time of commencement, owned or controlled, directly or indirectly, not less than eighty per cent of the outstanding voting shares of a corporation that is incorporated under the laws of this state and that has in this state assets with a fair market value of more than five million dollars and more than two hundred employees.

(B) "Resident Business" means:

(1) Any domestic corporation;

(2) Any foreign corporation licensed by the Secretary of State to do business in this state and to which all of the following apply:

(a) has assets in this state with a fair market value of at least five million dollars;

(b) has more than five hundred employees in this state;

(c) has paid more than one million dollars in taxes to this state in its last fiscal year;

(d) has its principal place of business or its principal executive office in and owns or leases real estate in this state;

(e) prior to the commencement of the proposed acquisition of control had more than ten per cent and at least one thousand of its beneficial or record shareholders resident in this state.

4. Pursuant to definitions used in Ohio Revised Code § 1710.01, Campeau is a "foreign business" which seeks to acquire control of Federated, a "resident business" as defined in 1710.01(B) and is subject to the provisions of the Act before it may proceed with the acquisition.

5. The Act does not apply to control acquisitions by businesses incorporated in Ohio or in any other state or territory of the United States. Moreover, the Act does not apply to businesses organized under the laws of a foreign country but which have substantial interests in Ohio as described in § 1710.01(A)(2).[1]

## OPINION

The issue before the Court concerns the constitutionality of an Act of the Ohio General Assembly dealing with attempts by businesses organized under the laws of a foreign country to acquire control of businesses with substantial interests in Ohio. The Act requires foreign businesses to file an "application for approval of acquisition" with the Ohio Department of Development. Ohio Revised Code § 1710.03[2]. In addition, where the target business holds Ohio liquor permits, the foreign business may not proceed with the acquisition until such time as the Ohio Department of Liquor Control has approved the transfer of the licenses. Ohio Revised Code § 1710.04. The requirements do not extend, however, to similarly situated offerors which are incorporated under the laws of Ohio or any other state within the United States. Nor does the Act apply to foreign businesses which already have substantial interests in Ohio.[3]

It is well settled that "the National Government's power, under the Commerce Clause, to regulate commerce does not ex-

---

**1.** Ohio Revised Code § 1710.01(A)(2) has been referred to by some as the "Honda Exception." Tr. at 15.

**2.** The "application for approval" must set forth the following:

(1) the details of financing arrangements for the acquisition, including any plans for sale or disposition of assets of the resident business;

(2) the acquisition's anticipated effect on employment and general economic activity in Ohio;

(3) the acquisition's anticipated effect on the tax revenue of Ohio and its political subdivisions; and

(4) the acquisition's anticipated effect on the production of goods in, and export of goods from, Ohio.

Ohio Revised Code § 1710.03(A).

**3.** *See* Ohio Revised Code § 1710.01(A)(2), the so-called "Honda Exception". The Court notes in passing that Honda, a Japanese business, does have substantial interests in Ohio centered around the Marysville area.

clude all state power of regulation." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 140, 94 S.Ct. 383, 396, 38 L.Ed.2d 348 (1973). It is equally well established, however, that states may not enact laws which patently discriminate against interstate trade. *City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978).

■ The Commerce Clause not only prohibits states from discriminating against trade with other states within the United States, it prohibits states from discriminating against trade with foreign countries. U.S. Const., Art. I, § 8, cl. 3.[4] *See also Wardair Canada, Inc. v. Florida Department of Revenue,* 477 U.S. 1, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986); *South Central Timber Developmental, Inc. v. Wunnicke,* 467 U.S. 82, 104 S.Ct. 2237, 81 L.Ed. 2d 71 (1984); *Japan Line, Ltd. v. City of Los Angeles,* 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1978). Moreover the discriminatory purpose or effect of a state law in interstate or foreign commerce subjects that law to a heightened scrutiny under the Commerce Clause. *CTS Corp. v. Dynamics Corp. of America,* 481 U.S. ——, 107 S.Ct. 1637, 1643, 95 L.Ed.2d 67 (1987) ("The principal objects of ... [Commerce Clause] scrutiny are statutes that discriminate against interstate commerce." *Citing Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 36–37, 100 S.Ct. 2009, 2015–16, 64 L.Ed.2d 702 (1980) and *Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978)).

■ Heightened scrutiny under the Commerce Clause requires the Court to determine whether the Act discriminates against out-of-state commerce or whether it creates an impermissible risk of inconsistent regulation among the states. *CTS Corp.,* 107 S.Ct. at 1648–1651. Only if the state law is not invalid according to the above criteria must the Court consider if the burden on interstate commerce outweighs the putative local benefits of the regulation. *Id.*

■ The Ohio Act, however, which seeks to regulate only takeovers by businesses organized in countries other than the United States and then only certain of those businesses, is discriminatory on its face. Clearly, the statute fails to "regulate [commerce] evenhandedly" as is required by Supreme Court decisions construing the Commerce Clause. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 471–472, 101 S.Ct. 715, 727–728, 66 L.Ed.2d 659 (1981). *See also CTS Corp.,* 107 S.Ct. at 1650–51 (upholding an Indiana statute because "[i]t has the same effects on tender offers whether or not the offeror is a domiciliary or resident of Indiana"); *Lewis v. BT Investment Managers, Inc.,* 447 U.S. at 36, 100 S.Ct. at 2015 ("legislation that visits its effects equally upon both interstate and local business may survive constitutional scrutiny if it is narrowly drawn"). Thus, although "[n]o one disputes that a State may enact laws pursuant to its police powers that have the purpose and effect of encouraging domestic industry, ... [o]ne of the fundamental purposes of the [Commerce] Clause was to insure against discriminatory state legislation." *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 271, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) (citations omitted). Therefore, the discriminatory impact of the Ohio Act constitutes a *per se* violation of the Commerce Clause.[5] *CTS Corp., supra.*

The Ohio Act also fails to pass muster under the second prong of the Commerce Clause analysis. State regulations are invalid under the Commerce Clause if there is a "likelihood that a [party in interstate commerce] will be subject to inconsistent obligations in different states." *Brown–Forman Distillers Corp. v. New York State Liquor Authority,* 476 U.S. 573, 106

**4.** The Commerce Clause provides: "The Congress shall have power ... to regulate commerce with foreign nations, and among the several States ..." U.S. Const., Art. I § 8 cl. 3.

**5.** Indeed, even under the balancing test enunciated in *Pike v. Bruce Church, Inc.,* 397 U.S. 137,

90 S.Ct. 844, 25 L.Ed.2d 174 (1970), Ohio's interest in protecting its own economy does not warrant a statute which discriminates in its application between U.S. and foreign businesses and even discriminates among certain foreign businesses.

S.Ct. 2080, 2087, 90 L.Ed.2d 552 (1986). The definition of "resident business" in the Ohio Act, Ohio Revised Code § 1710.01 (B), gives rise to an impermissible risk that many states could seek to regulate the acquisition of control of a national company, such as Federated, which has substantial assets and principal places of business in states other than Ohio. These other states would likely impose different requirements. Thus, the risk of inconsistent state regulations created by the Ohio Act, renders it invalid under the Commerce Clause.

### Preliminary Injunction

■ In determining whether to grant a motion for a preliminary injunction the Court must consider four factors:

(1) Whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

(2) Whether the movant has shown irreparable injury;

(3) Whether the preliminary injunction could harm third parties;

(4) Whether the public interest would be served by issuing the preliminary injunction.

*Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985).

Based on the Court's determination above, that the Ohio Act is invalid under the Commerce Clause, the Plaintiffs' have successfully met the first prong of the test for preliminary injunctive relief.[6]

Moreover, Plaintiffs are in danger of suffering irreparable injury because, as the United States Court of Appeals for the Sixth Circuit has recognized, "subjecting [tender offerors] to an unconstitutional application of [state laws regulating interstate tender offers] amounts to irreparable injury." *Martin–Marietta Corp. v. Bendix Corp.*, 690 F.2d 558 (6th Cir.1982). In addition, Defendants will not be harmed if

the interim relief is granted as Federated "has no right to have [an unconstitutional] state ... take-over law applied" *id.* at 568 and the State of Ohio and its officials have no legitimate interest in enforcing unconstitutional statutes. Finally, the public interest would be served by granting a preliminary injunction because "it is in the public interest not to perpetuate the unconstitutional application of a statute." *Id.*

### CONCLUSIONS OF LAW

A. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 78aa·and 28 U.S.C. §§ 1331, 1332 and 1337(a).

B. A State may enact laws pursuant to its police powers that have the purpose and effect of encouraging domestic industry. *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 271, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984).

C. A state may not enact laws which discriminate against foreign commerce or which may adversely affect interstate commerce by creating a risk of inconsistent state regulation. Commerce Clause of the United States Constitution, Art. I, § 8, cl. 3; *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. ——, 107 S.Ct. 1637, 1643, 95 L.Ed.2d 67 (1987); *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 36–37, 100 S.Ct. 2009, 2015–2016, 64 L.Ed.2d 702 (1980); *Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed. 2d 475 (1978).

D. Subjecting a tender offeror to an unconstitutional application of a state take-over regulation amounts to irreparable injury. *Martin–Marietta Corp. v. Bendix Corp.*, 690 F.2d 558 (6th Cir.1982).

In accordance with the foregoing, Plaintiffs' Motion for a Preliminary Injunction is hereby GRANTED and Defendants are hereby enjoined from enforcing the Ohio Foreign Business Acquisitions Act. In addition, Defendant Federated's Motion for a

---

**6.** Because the Court determines that the Act is unconstitutional under the Commerce Clause, it need not address Plaintiffs' arguments based on

Preliminary Injunction is hereby DENIED.[7]

IT IS SO ORDERED.

the Supremacy Clause, the Due Process Clause and the Equal Protection Clause.

**7.** Because Defendant Federated's Motion for a Preliminary Injunction sought to enjoin Plaintiffs from failing to comply with the Act, it is necessarily denied in accordance with the Court's determination that the Act is unconstitutional.