8 F.3d 358
 Cleamtee GARNER, Father and next-of-kin of Edward Eugene
Garner, a deceased minor, Plaintiff-Appellant,
v.
MEMPHIS POLICE DEPARTMENT; City of Memphis, Tennessee,
Defendants-Appellees.
 No. 92-6196.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 29, 1993.
Decided Oct. 22, 1993.
Rehearing and Suggestion for Rehearing
En Banc Denied Dec. 7, 1993.
 
 Clyde E. Murphy (briefed), NAACP Legal Defense & Educational Fund, New York City, Walter Lee Bailey, Jr. (briefed), Anne B. Gullick (argued and briefed), Memphis, TN, for plaintiff-appellant.
 Arthur J. Shea, Henry L. Klein (argued and briefed), Apperson, Crump, Duzane & Maxwell, Memphis, TN, for defendants-appellees.
 Before: MERRITT, Chief Judge, and KEITH and SUHRHEINRICH, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 This is a wrongful death action brought under 42 U.S.C. § 1983 which has now been to this court three times and once to the Supreme Court. It involves the fatal shooting by a Memphis police officer of a fifteen-year-old fleeing felony suspect under circumstances which this court and the Supreme Court have held violated the Fourth Amendment right to be free from unreasonable seizure. Garner v. Memphis Police Dept., 710 F.2d 240 (6th Cir.1983); Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The case was back before the district court on remand from the Supreme Court for consideration of whether the shooting occurred pursuant to municipal "policy" under Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). On remand, the district court held that the Supreme Court's ruling in this case should not be applied retroactively to this case. Accordingly, the court entered summary judgment in favor of the defendants, and denied plaintiff's motion for partial summary judgment on the issue of liability. Plaintiff appeals both rulings. We reverse the district court's grant of summary judgment in favor of the defendants and its denial of plaintiff's partial summary judgment motion. We also remand for entry of an order granting plaintiff's motion for partial summary judgment and for a determination of damages.
 
 I.
 
 2
 On the night of October 3, 1974, a fifteen-year-old, unarmed boy broke a window and entered an unoccupied residence in suburban Memphis to steal money and property. Two police officers, Elton Hymon and Leslie Wright, were called to the scene by a neighbor. The officers intercepted the youth as he ran from the back of the house to a six foot cyclone fence in the back yard. After shining a flashlight on the boy as he crouched by the fence, Officer Hymon identified himself as a policeman and yelled "Halt." He could see that the fleeing felon was a youth and was apparently unarmed. As the boy jumped to get over the fence, the officer fired at the upper part of the body, as he was trained to do by his superiors at the Memphis Police Department. He shot because he believed the boy would elude capture in the dark once he was over the fence. The youth died of the gunshot wound. On his person was ten dollars worth of money and jewelry he had taken from the house.
 
 
 3
 Officer Hymon had been taught that it was proper under Tennessee law to kill a fleeing felon rather than run the risk of allowing him to escape. A Tennessee statute provided that "[i]f, after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all the necessary means to effect the arrest." Tenn.Code Ann. § 40-7-108.[1] The Memphis Police Department's policy on use of deadly force was slightly more restrictive than the statute, but still allowed the use of deadly force in cases of burglary. Tennessee v. Garner, 471 U.S. at 5, 105 S.Ct. at 1698. The Police Department's policy was promulgated by the Department's Director, with the consultation and approval of the Mayor.
 
 
 4
 Decedent's father filed this action under 42 U.S.C. § 1983 to recover damages for wrongful death caused by claimed constitutional violations of the Fourth, Eighth and Fourteenth Amendments. The complaint named as defendants Officer Hymon, the Police Department, its Director, the City of Memphis, and the Mayor of Memphis. After a three day bench trial, the district court dismissed the claims against the Director and the Mayor for lack of evidence. It also dismissed the claims against Officer Hymon, holding that his actions were authorized by the Tennessee statute, which the court held was constitutional. In accordance with Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the district court also dismissed the claims against the City and the Police Department, holding that a city is not a "person" subject to suit under § 1983.
 
 
 5
 On appeal, this court affirmed the district court's dismissal of the individual defendants, holding that they were protected by the doctrine of qualified immunity because they acted in good faith reliance on Tenn.Code Ann. § 40-7-108. Garner v. Memphis Police Dept., 600 F.2d 52 (6th Cir.1979) (Garner I ). We also remanded for reconsideration of the possible liability of the City and Police Department in light of Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which had come down after the district court's decision.
 
 
 6
 Because Monell held that a city may be liable in damages under § 1983 for constitutional deprivations that result from a "policy or custom" followed by the city, 436 U.S. at 694, 700-01, 98 S.Ct. at 2037, 2041, we instructed the district court to consider the following: (1) whether a municipality enjoys qualified immunity; (2) whether the use of deadly force was unconstitutional under the circumstances; (3) whether the use of hollow point bullets was unconstitutional; and (4) whether any unconstitutional municipal conduct flowed from a "policy or custom" under Monell. Garner I, 600 F.2d at 54-55.
 
 
 7
 On remand, the district court ordered memoranda and oral argument on the issue of whether the trial should be reopened. Upon consideration of the parties' submissions, the court denied further hearings and dismissed the case on the merits, holding that the constitutional claims had already been fully adjudicated. Because there had been no constitutional violation, the holding of Monell that cities could be liable for violations occurring pursuant to a policy or custom of the city did not require a different result. Plaintiff's motion for reconsideration was granted and he was allowed to submit further briefs and make an offer of proof. The court considered the offer of proof and once again ruled against plaintiffs. It held that the wisdom of a statute permitting the use of deadly force against all fleeing felons was a matter of policy for the legislature rather than the judiciary, and that the Tennessee statute was not unconstitutional on its face, nor as applied by the police officer in this case.
 
 
 8
 Addressing the question of the City's good faith immunity, the district court held that Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), prevented the City from claiming immunity from liability based on the good faith of its agent. Nevertheless, it found that it was still an open question whether the City might claim immunity if the City itself was relying in good faith on the Tennessee law as interpreted by the federal and state courts. The district court did not believe it necessary to address the constitutionality of the use of hollow point bullets, because it found that there was no causal connection between the use of hollow point bullets and Garner's death.
 
 
 9
 We reversed and remanded, holding that Memphis' deadly force policy, as applied to this case, violated the Fourth Amendment right to be free from unreasonable seizures. Garner v. Memphis Police Dept., 710 F.2d 240, 246 (6th Cir.1983) (Garner II ). We held that police officers cannot resort to deadly force to apprehend fleeing felons unless they have "probable cause--an objective, reasonable basis in fact to believe that the felon is dangerous or has committed a violent crime." Id. The Supreme Court granted certiorari and affirmed. The Court held that the Tennessee statute "is invalid insofar as it purported to give Hymon the authority to act as he did." Tennessee v. Garner, 471 U.S. at 22, 105 S.Ct. at 1707. Eight years ago the case was remanded to the district court for resolution of the Monell issue, and there it languished.
 
 
 10
 On remand, plaintiff filed a motion for partial summary judgment on the issue of the liability of the City and Police Department under Monell. Plaintiff attached two exhibits to the motion. The first was a copy of General Order No. 5-74, the Police Department policy statement authorizing use of deadly force in certain circumstances. The second exhibit was deposition testimony by the Mayor of Memphis, in which the Mayor states that he considered whether all types of burglary should be included on the list of felonies justifying use of deadly force, and concluded that they should. Defendants responded to the motion by asserting various legal arguments; they did not submit any additional evidence.
 
 
 11
 Last year, the district court finally denied plaintiff's motion for partial summary judgment and granted summary judgment in favor of the defendants, holding that, under Carter v. City of Chattanooga, 850 F.2d 1119 (6th Cir.1988) (en banc), cert. denied, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989), the Supreme Court's ruling in Tennessee v. Garner should not be applied retroactively to the parties. The court then dismissed the case. Plaintiff filed this timely appeal, challenging both the grant of summary judgment in favor of the defendants and the denial of plaintiff's motion for summary judgment.
 
 II.
 
 12
 We first consider the district court's holding that defendants are not liable because of their good faith reliance on previous judicial determinations that their fleeing felon policy was constitutional. The court based its decision upon Carter v. City of Chattanooga, Tenn., 850 F.2d 1119 (6th Cir.1988) (en banc), cert. denied, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989). In Carter, a case factually similar to this one, this court held that "Tennessee v. Garner should not have been retroactively applied to the City of Chattanooga.... [The City] was not at the time following a clearly established unlawful or unconstitutional policy." Id. at 1137. Carter's retroactivity analysis is clearly not relevant to the instant case. In Tennessee v. Garner, the Supreme Court applied its ruling retroactively to these parties. Neither this court nor the district court is free to reexamine the Supreme Court's ruling and reach a different conclusion. Moreover, this case is itself the case in which the Supreme Court declared the fleeing felon rule, and it is hornbook law that the rule should be applied retroactively in the very case that lays down a rule. Otherwise parties would have no incentive to argue for such a rule because they would get no benefit from winning the case.
 
 
 13
 Although the Supreme Court did not explicitly state that its holding was to be applied retroactively to the parties before the Court, the Court's intent is unmistakable:
 
 
 14
 We wish to make clear what our holding means in the context of this case.... The possible liability of the remaining defendants--the Police Department and the city of Memphis--hinges on Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and is left for remand. We hold that the statute is invalid insofar as it purported to give Hymon the authority to act as he did. As for the policy of the Police Department, the absence of any discussion of this issue by the courts below, and the uncertain state of the record, preclude any consideration of its validity.
 
 
 15
 Tennessee v. Garner, 471 U.S. at 22, 105 S.Ct. at 1707 (emphasis added).
 
 
 16
 The conclusion that the Supreme Court intended its holding to be applied to the parties before the Court is compelled by the reasoning of James B. Beam Distilling Co. v. Georgia, --- U.S. ----, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). In Beam, the Court considered whether its holding in Bacchus Imports v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), should be retroactively applied in other cases pending when Bacchus was decided. As in Tennessee v. Garner, the Supreme Court in Bacchus had remanded the case to the district court for further proceedings without explicitly stating that the rule established in the case was to be applied retroactively to the parties before the Court. The Beam court held unanimously that Bacchus' silence on the retroactivity issue indicated that the Court intended to follow the usual practice of applying its decision to the parties before it. See Beam, --- U.S. at ----, 111 S.Ct. at 2445 (plurality opinion) ("Because the Bacchus opinion did not reserve the question whether its holding should be applied to the parties before it ... it is properly understood to have followed the normal rule of retroactive application in civil cases."); see also id. at ----, 111 S.Ct. at 2451 (O'Connor, J., dissenting) ("I agree that the Court in Bacchus applied its rule retroactively to the parties before it. The Bacchus opinion is silent on the retroactivity question. Given that the usual course in cases before this Court is to apply the rule announced to the parties in the case, the most reasonable reading of silence is that the Court followed its customary practice."). The same reasoning applies to Tennessee v. Garner.
 
 
 17
 The Supreme Court intended its ruling in this case to be applied retroactively to the parties. The defendants do not, therefore, have a non-retroactivity defense based upon their good faith reliance upon previous judicial decisions. Because the district court's grant of summary judgment in favor of the defendants was based solely upon a retroactivity analysis, the court's ruling must be reversed.
 
 III.
 
 18
 We now consider the district court's denial of plaintiff's motion for partial summary judgment on the question of liability. A denial of summary judgment is an interlocutory order, not ordinarily subject to appeal. Nazay v. Miller, 949 F.2d 1323, 1328 (3rd Cir.1991). Where, however, an appeal from a denial of summary judgment is presented in tandem with an appeal from a grant of summary judgment, this court has jurisdiction to review the propriety of the district court's denial of summary judgment. Id.
 
 
 19
 Plaintiff's motion for partial summary judgment asserts that there remain no genuine issues of material fact, and that the law clearly establishes defendants' liability. Defendants' response to the summary judgment motion raises only legal arguments and does not assert that there remain genuine issues of material fact. Where a motion for summary judgment is denied on the grounds that there exists a genuine issue of material fact, review of this ruling is under the abuse of discretion standard. Pinney Dock and Transport Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Where, however, a denial of summary judgment is based solely upon legal grounds, review is de novo. See Eugene D. v. Karman, 889 F.2d 701, 706 (6th Cir.1989), cert. denied, 496 U.S. 931, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990). Because the district court denied plaintiff's partial summary judgment motion solely upon legal grounds, we review this denial de novo.
 
 
 20
 As the Supreme Court stated, defendants' liability hinges on Monell. Tennessee v. Garner, 471 U.S. at 22, 105 S.Ct. at 1707. In Monell, the Supreme Court overruled Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and held that municipalities are "persons" subject to suit under § 1983. Monell, 436 U.S. at 700-01, 98 S.Ct. at 2041. Municipalities are not, however, liable for every misdeed of their employees and agents. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694, 98 S.Ct. at 2037-38. This circuit has stated that to satisfy the Monell requirements a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." Coogan v. City of Wixom, 820 F.2d 170, 176 (6th Cir.1987) (adopting the test articulated in Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir.1984) (en banc), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)). Plaintiff has met this standard.
 
 
 21
 First, it is clear that the defendants had a policy authorizing use of deadly force when necessary to apprehend a fleeing burglary suspect. Memphis Police Department General Order 5-74(3)(b)(3) provides:
 
 
 22
 (3) Other Felonies Where Deadly Force is Authorized.
 
 
 23
 After all reasonable means of preventing or apprehending a suspect have been exhausted, DEADLY FORCE is authorized in the following crimes:
 
 
 24
 (a) Kidnapping
 
 
 25
 (b) Murder in the 1st or 2nd degree
 
 
 26
 (c) Manslaughter
 
 
 27
 (d) Arson (Including the use of firebombs)
 
 
 28
 (e) Rape
 
 
 29
 (f) Assault and battery with intent to carnally know a child under 12 years of age
 
 
 30
 (g) Assault and battery with intent to commit rape
 
 
 31
 (h) Burglary in the 1st, 2nd, or 3rd degree
 
 
 32
 (i) Assault to commit murder in the 1st or 2nd degree
 
 
 33
 (j) Assault to commit voluntary manslaughter
 
 
 34
 (k) Armed and simple robbery
 
 
 35
 App. 81 (emphasis added). This order was signed by the Director of the Memphis police. The Mayor of Memphis testified in a deposition that he was also involved in the decision to include all types of burglary on the list of felonies justifying use of deadly force: "One of the arguments was to eliminate burglary and this type thing, some kinds of burglary, which I did not do. I did not think it should be done." App. 103. Defendants do not contest that General Order 5-74 represented the official policy of the Memphis Police Department and the City of Memphis.
 
 
 36
 Defendants argue instead that it was not a policy under the Monell line of cases because it did not represent a "deliberate choice to follow a course of action ... from among various alternatives." Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). In devising their fleeing felon policy, defendants relied on a Tennessee statute, Tenn.Code Ann. § 40-7-108:
 
 
 37
 Resistance to Officer --If, after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all the necessary means to effect the arrest.
 
 
 38
 Defendants argue that they had no choice but to follow this statute.
 
 
 39
 This argument is without merit. The defendants were bound to follow the statute in that they could not adopt a more permissive deadly force policy by, for example, eliminating the requirement that an officer give notice of an intention to arrest before employing deadly force. The statute did not, however, prevent the defendants from adopting a more restrictive deadly force policy. In fact, defendants did exercise their freedom to choose a more restrictive policy, refusing to authorize use of deadly force to apprehend certain non-violent felony suspects such as embezzlers and frauds. App. 93; see also Tennessee v. Garner, 471 U.S. at 5, 105 S.Ct. at 1698 (noting that Memphis' policy was slightly more restrictive than the Tennessee statute). Defendants' decision to authorize use of deadly force to apprehend nondangerous fleeing burglary suspects was, therefore, a deliberate choice from among various alternatives under Pembaur.
 
 
 40
 Having identified the policy and connected it to the defendants, plaintiff need only show that the policy caused the injury complained of, the death of plaintiff's son. See Coogan, 820 F.2d at 176. Defendants did not in their briefs or at oral argument contest the causation issue. The Police Department taught Officer Hymon that it was proper to shoot a fleeing burglary suspect in order to prevent escape. That was their policy. Garner I, 600 F.2d at 53. As the Supreme Court stated in this case, "Hymon was acting under the authority of a Tennessee statute and pursuant to Police Department policy." Tennessee v. Garner, 471 U.S. at 4, 105 S.Ct. at 1698. Thus, there is a sufficient link between defendants' deadly force policy and Hymon's actions to establish that the policy was the "moving force of the constitutional violation." See Monell, 436 U.S. at 694, 98 S.Ct. at 2037. Plaintiff has satisfied all of the Monell requirements.
 
 
 41
 Defendants raise two additional objections to plaintiff's motion for partial summary judgment. First, they argue that the Police Department and the City should be dismissed from the case because the district court dismissed Officer Hymon, finding that he had not committed a constitutional violation. The district court found that Officer Hymon "acted within his duties as a reasonable police officer without malice, predisposition or racial animus and within the guidelines afforded him as a Memphis policeman." Defendants rely upon City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), in which the Court upheld the district court's dismissal of the City of Los Angeles and its Police Commission, holding that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." Id. at 799, 106 S.Ct. at 1573.
 
 
 42
 Defendants' reliance on Heller is misplaced. The point in Heller was that the city could not be held responsible for a constitutional violation which could have occurred but did not. In the instant case there is no doubt that a constitutional violation occurred. "A police officer may not seize an unarmed, nondangerous suspect by shooting him dead. The Tennessee statute is unconstitutional insofar as it authorizes the use of deadly force against such fleeing suspects." Tennessee v. Garner, 471 U.S. at 11, 105 S.Ct. at 1701. The district court's holding to the contrary was overturned by this court, and the Supreme Court affirmed. Garner II, 710 F.2d 240; Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694.
 
 
 43
 This court upheld Officer Hymon's dismissal from the case not because he committed no constitutional violation, but because he was protected by the doctrine of qualified immunity. Tennessee v. Garner, 471 U.S. at 5, 105 S.Ct. at 1698; Garner II, 710 F.2d at 242; Garner I, 600 F.2d at 54. Under the law of this circuit, a municipality may not escape liability for a § 1983 violation merely because the officer who committed the violation is entitled to qualified immunity. Doe v. Sullivan County, Tenn., 956 F.2d 545, 554 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 187, 121 L.Ed.2d 131 (1992).
 
 
 44
 Defendants' final argument is that a municipality may be held liable under § 1983 only if its policy reflects "deliberate indifference" to constitutional rights under City of Canton, Ohio v. Harris, 489 U.S. 378, 392, 109 S.Ct. 1197, 1207, 103 L.Ed.2d 412 (1989). They argue that they were not "indifferent" to the constitutional rights of fleeing felony suspects, but developed their policy in the good faith belief that it was within constitutional limits. Harris addressed the question under what circumstances a municipality is liable "if a concededly valid policy is unconstitutionally applied by a municipal employee" because of the municipality's failure to adequately train that employee. Harris, 489 U.S. at 387, 109 S.Ct. at 1204.
 
 
 45
 Harris is a "failure to train" case, and is not on point. The "deliberate indifference" test is employed to determine when "inadequate training can justifiably be said to represent 'city policy.' " Id. at 390, 109 S.Ct. at 1205. In the instant case there is no question that General Order 5-74 can justifiably be said to represent City policy. The distinction between the type of case to which Harris is properly applied and the case at bar is apparent from the follow passage from Harris, in which the Court illustrates how the "deliberate indifference" test would be applied in a variation on the Tennessee v. Garner fact pattern:
 
 
 46
 For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see Tennessee v. Garner, 471 U.S. 1 [105 S.Ct. 1694, 85 L.Ed.2d 1] (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.
 
 
 47
 Id. 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10. This case is not a variation on Tennessee v. Garner, it is Tennessee v. Garner. There is no need for an elaborate analysis of whether the defendants' failure to act was the result of such "deliberate indifference" that it was essentially a matter of policy. Far from failing to train their officers in the constitutional limitations on the use of deadly force, defendants trained their officers to exceed these limitations. That the defendants did not intend to violate the Constitution is no defense. In Harris, "deliberate indifference" refers to indifference to injuries likely to result from a failure to act, not indifference to whether such injuries constitute deprivation of a constitutional right.
 
 
 48
 Having decided that plaintiff's motion for partial summary judgment should have been granted, the only remaining question is the appropriate disposition of the case. Under 28 U.S.C. § 2106, this court has jurisdiction to "remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." In a case such as this, where both sides have had an opportunity to present evidence, the facts are uncontroverted, and the proper disposition is clear, this court may direct the entry of summary judgment. See Nazay, 949 F.2d at 1328; Weber v. Dell, 804 F.2d 796, 798 n. 2 (2d Cir.1986), cert. denied, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); Morgan Guaranty Trust Co. v. Martin, 466 F.2d 593, 600 (7th Cir.1972).
 
 
 49
 Accordingly, we REVERSE the district court's grant of summary judgment in favor of the defendants and its denial of plaintiff's partial summary judgment motion. We also REMAND with directions that the district court enter an order of partial summary judgment in favor of the plaintiff on the issue of liability. The only issue remaining for the district court to resolve upon remand is the appropriate measure of damages.
 
 
 50
 SUHRHEINRICH, Circuit Judge, dissenting.
 
 
 51
 The majority reverses the district court's decision and grants summary judgment in favor of Garner on the issue of liability. Because I believe that the majority's actions ignore the facts of this case and the law of this circuit, I must respectfully dissent.
 
 I.
 
 52
 This case began eighteen years ago when Officer Hymon, a young black policeman with the Memphis Police Department, shot and killed Edward Garner, another young black man who, though unarmed, was attempting to avoid arrest for the burglary he had just committed. Officer Hymon's decision, made in a split second and under potentially-threatening conditions, has been evaluated and re-evaluated in courtrooms from the Western District of Tennessee to the United States Supreme Court.
 
 
 53
 This litigation has spanned and, in some instances, created many of the most profound changes in the law surrounding actions brought under 42 U.S.C. § 1983. In 1975, when this suit was filed, it was absolutely clear that the City and the Police Department, the only remaining defendants in this case, could not even be sued under § 1983.[1] Moreover, it was virtually undisputed that a police officer could use all reasonably necessary force, including deadly force, to stop a fleeing felon. The Tennessee legislature adopted the common law "fleeing felon" rule before the turn of this century, Tenn.Code Ann. § 40-7-108, and that statute had withstood repeated state and federal judicial scrutiny.
 
 
 54
 Officer Hymon's conduct was assailed as unconstitutional despite the fact that the Tennessee statute and the long-standing common law rule specifically authorized the use of deadly force in such circumstances. In 1976, the district court entered judgment in favor of the defendants on the grounds that the shooting of young Garner was not a violation of the United States Constitution.
 
 
 55
 This court affirmed the district court's judgment as to the individual defendants but remanded for reconsideration in light of Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which had held that municipalities could be sued under § 1983.[2] The district court again entered judgment for the City and the Department, again on the grounds that there had been no constitutional deprivation. This court again reversed, holding that Officer Hymon's actions violated the Fourth and Fourteenth Amendments.[3] That decision was affirmed by the United States Supreme Court and the case was once again remanded to the district court for consideration of the City's and Department's liability under Monell.[4] Again, the district court found no liability, this time on the grounds that intervening case law in this circuit prevents a city from being held liable for "Garner " shootings that occurred before the Supreme Court's ruling on that issue. Now, again, this court is determined to reverse.
 
 A. Monell
 
 56
 It has been clear, at least since 1978, that liability in this case, if any, must be determined under Monell. The majority, continually dissatisfied with the district court's results, now enters summary judgment itself against the City and the Department on that basis. The majority errs, in my view, because the facts of this case, as presented in the record before us, do not support Monell liability.
 
 
 57
 The majority correctly sets forth the three elements of Monell liability: (1) an official "policy" or "custom" (2) created by the city or department, (3) the execution or implementation of which caused the particular constitutional injury. Maj. Op. at 363. See Monell, 436 U.S. at 694, 98 S.Ct. at 2037. The majority identifies the policy upon which it would base liability, Memphis Police Department General Order 5-74(3)(b)(3), and holds that it is the official product of departmental and city policymakers. Maj. Op. at 363-64. I have no quarrel with the majority over these assessments. The majority's error, I believe, lies with its analysis of the third Monell element:
 
 
 58
 Having identified the policy and connected it to the defendants, plaintiff need only show that the policy caused the injury complained of, the death of the plaintiff's son. Defendants do not contest the causation issue.
 
 
 59
 Id. at 363-64 (emphasis added).
 
 
 60
 I disagree. The City and the Department have done nothing for the last eighteen years but contest the fact that this policy caused Garner's death. The defendants have consistently and urgently pleaded with this court and the district court to understand that Officer Hymon acted under the authority of Tennessee state law, a law that governed the conduct of all Tennessee law enforcement. Now, simply because the Department and the City took upon themselves the task of drafting a more restrictive--but, in the exercise of hindsight, still unconstitutional--policy, the majority is holding them liable.[5]
 
 
 61
 To hold the Department and the City liable, however, the majority must ignore the third Monell element: causation. The policy upon which the majority fixes liability is Departmental Order 5-74. The majority makes no mention of the fact that the order is dated February 5, 1974, only eight months before Officer Hymon shot Garner and more than six months after Officer Hymon's initial eight-week training course that he received upon joining the Department. There is no evidence that Officer Hymon was ever trained under Departmental Order 5-74. On the other hand, the record contains every indication that Officer Hymon was trained on the use of deadly force according to the guidelines established by the Tennessee legislature and the common law.
 
 
 62
 Even if the majority's assumption is correct, that between February and October of 1974, Officer Hymon was informed of Departmental Order 5-74, it is illogical to assume that he was instructed as to anything other than how the new policy differed from the state guidelines and common law rule he had already been taught.
 
 
 63
 It is not disputed that Officer Hymon's actions that night came within that portion of the fleeing felon rule that Departmental Order 5-74 left unchanged. He had been taught, before Departmental Order 5-74 was ever written, that he was allowed, even duty-bound, to use deadly force in such situations, provided it was reasonably necessary in order to effect the arrest. Officer Hymon was not "executing" or "implementing" Departmental Order 5-74 when he shot Garner; he was acting as he had been taught to act, in accordance with a one-hundred-and-sixteen-year-old statute and a common law rule that had existed for hundreds of years. Therefore, it cannot be said that the Department's policy was the "moving force of the constitutional violation."
 
 
 64
 The majority is impaled upon the horns of a dilemma. It cannot hold the City and the Department liable for failing to draft a constitutional policy or for failing to train its officers in the constitutional use of deadly force. These theories require a showing of the City's and the Department's "deliberate indifference" to the rights of arrestees. Such a showing is impossible in this case due to the centuries of approval courts had given the fleeing felon rule. Nor can the majority rest liability on the statute or the common law, the patently obvious "moving forces" here, because these cannot be fairly attributed to the City. The majority's only means of holding the City and the Department liable, therefore, is to assert that Departmental Order 5-74 killed Garner, despite the fact that there is no evidence to support a conclusion that Officer Hymon was "executing" or "implementing" that policy, rather than the statute or common law, when he shot Garner.[6]
 
 B. Carter
 
 65
 In 1982, after the shooting in this case but before the Garner decision, a Chattanooga police officer shot and killed a fleeing burglary suspect. Carter v. City of Chattanooga, 850 F.2d 1119 (6th Cir.1988) (en banc), cert. denied, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989). In Carter, therefore, neither the City of Chattanooga nor its police department had any more reason to believe that the common law rule or Section 40-7-108 of the Tennessee Code were unconstitutional than did the City and the Department in the case before us now. On those grounds, in Carter, a majority of this court en banc held that the city was not liable for the unconstitutional shooting. The majority in this case, however, refuses to adhere to this holding.
 
 
 66
 The court in Carter reasoned that it would be pointless and inequitable to impose liability for a city's failure to foresee the Supreme Court's decision in Garner, because Garner "established a new and unexpected principle of law setting aside clear precedent, particularly in this circuit, on which the City of Chattanooga and its police officers had a right to rely." Carter, 850 F.2d at 1129 (emphasis added). Pointless, because to impose liability would "have little, if any, effect of furthering the deterrent goal of Garner." Id. at 1130. Inequitable, because the City of Chattanooga "was more than merely exercising good faith [as to a murky area of the law]; it was acting in reliance on what appeared over many years to have been valid and proper state directed police conduct and policy." Id. at 1131.
 
 
 67
 The district court, in the present case, found "no basis upon which to distinguish the Carter decision from this case and the issue presently before the court." Accordingly, it entered summary judgment in favor of the City and the Department. The majority rejects the district court's conclusion and asserts that Carter has no impact because "the Supreme Court intended its ruling in [Garner ] to be applied retroactively to the parties." In this single utterance, the majority misconstrues both the Carter and the Garner decisions.
 
 
 68
 The Supreme Court's holding in Garner was carefully limited to declaring unconstitutional the actions of officer Hymon and the Tennessee statute which authorized them. No one is arguing that Garner should not be applied retroactively. The Supreme Court's holding is being given full force and effect; it is now undisputed in this case, just as it was undisputed in Carter, that the officer's shooting was unconstitutional. The ultimate issue, however, both in Carter and in the present case, is whether the City and the Department are liable in damages for that deprivation. On this issue, the Supreme Court carefully expressed no opinion and thus there is nothing to be given "retroactive effect." In Carter, on the other hand, this court squarely held that such liability could not be imposed. The majority's cryptic warning, therefore, that "[n]either this court nor the district court is free to reexamine the Supreme Court's ruling," is misdirected. It is the majority that should take care not to attribute to the Supreme Court rulings it has not made.
 
 
 69
 To be sure, a panel of this court in Garner II opined that the City's and the Department's reliance was irrelevant. Garner II, 710 F.2d at 248-49. Carter, however, disavowed this dicta and held that a City's good faith reliance on the fleeing felon rule prior to the Supreme Court's decision in Garner precludes liability for pre-Garner shootings. Therefore, I would hold that the district court correctly applied Carter to resolve this case in favor of the City and the Department. The majority errs, in my view, by refusing to give Carter controlling effect.
 
 II.
 
 70
 Cleamtee Garner has persuaded the highest court in the land to declare, without equivocation, that his son died in violation of some of this county's most deeply-held principles. Just as fundamental, however, is the principle upon which this court relied in Carter: it is simply not fair, and not in keeping with the letter, the purpose or the intent of 42 U.S.C. § 1983 to hold the City and the Department liable in damages for young Garner's death when they could not have known that the actions of its officers were unconstitutional. The determination that the death of Mr. Garner's son was unconstitutional is, and must be, a separate question from whether the citizens of Memphis must compensate that tragedy under § 1983.
 
 
 71
 I would affirm the district court's judgment in favor of the City and the Department and, therefore, respectfully dissent.
 
 
 
 [1]
 At the time of the shooting, this statement was codified at Tenn.Code Ann. § 40-808
 
 
 [1]
 See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (municipalities not "persons" within the meaning of § 1983), overruled by Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Originally, the City and the Department, not amenable to suit under § 1983, were sued directly under the Fourth and Fourteenth Amendments and the general federal question statute, 28 U.S.C. § 1331, in a Bivens-style action. See Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)
 
 
 [2]
 Garner v. Memphis Police Dep't, 600 F.2d 52 (6th Cir.1979)
 
 
 [3]
 Garner v. Memphis Police Dep't, 710 F.2d 240 (6th Cir.1983) (hereinafter "Garner II ")
 
 
 [4]
 Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (hereinafter "Garner ")
 
 
 [5]
 Given this court's decision in Carter v. City of Chattanooga, 850 F.2d 1119 (6th Cir.1988) (en banc), cert. denied, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989), discussed infra, the City and the Department in this case will most assuredly be the only entities held liable for acting in reliance upon the hundreds of years of the fleeing felon rule, at least in this circuit
 
 
 [6]
 Ironically, the majority cannot even assert that the Department is liable for failing to train its officers under the new policy in a more timely manner because the new policy made no change to the fleeing felon rule relevant to the shooting of Garner