

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

August 11, 1995

Mr. Doyne Bailey
Administrator
Texas Alcoholic Beverage Commission
P.O. Box 13127
Austin, Texas 78711-3127

Opinion No. DM-361

Re: Whether a requirement in the Alcoholic Beverage Code that an applicant for a liquor license or permit have been a resident of Texas for at least one year before submitting the application violates the United States Constitution (RQ-747)

Dear Mr. Bailey:

Various provisions of the Alcoholic Beverage Code (the "code") require an applicant for an alcoholic beverage[1] permit or license to have resided in the State of Texas for a period of one year prior to submitting the application. You ask whether the one-year residency requirement violates the United States Constitution. You particularly ask that we consider your question in light of a decision of the United States Court of Appeals for the Fifth Circuit concluding that a similar three-year residency requirement was constitutionally invalid.

The code requires any individual who desires to manufacture, sell, transport, or warehouse liquor to first obtain from the Alcoholic Beverage Commission (the "commission") an appropriate permit. Alco. Bev. Code § 11.01(a). Section 11.46(a)(11) of the code authorizes the commission or the administrator of the commission to refuse to grant an original or renewal permit if the applicant has not been a citizen of Texas for a period of one year immediately preceding the date he or she filed the application. Similarly, section 61.01 requires an individual who desires to manufacture or brew beer for commercial purposes to obtain a license or permit, as appropriate, from the county in which the individual desires to conduct business. *See also id.* §§ 61.31 - .32. In general, a county judge must deny an application for a license as a distributor or retailer if the county judge finds that the applicant has not been "a citizen of Texas for a period of one year immediately preceding the filing of his application." *Id.* § 61.42. Other provisions of the code contain similar residency requirements. *See id.* §§ 11.61(b)(19), 109.53.

Prior to September 1, 1993, the Alcoholic Beverage Code required that an applicant for a permit or license have resided in Texas for three years preceding the filing of the application. *See id.* §§ 11.46, 61.42, *amended by* Act of May 29, 1993, 73d Leg.,

---

[1]For purposes of the code, "alcoholic beverage" means "alcohol, or any beverage containing more than one-half of one percent of alcohol by volume, which is capable of use for beverage purposes, either alone or when diluted." Alco. Bev. Code § 1.04(1).

R.S., ch. 934, §§ 21, 50, 1993 Tex. Sess. Law Serv. 3954, 3960-61, 3970-71. Under the previous version of the law, two individuals who were not Texas residents and whose applications for a mixed beverage permit the commission therefore denied filed a lawsuit claiming that the statutory residency requirement violated the United States Constitution. *See Cooper v. McBeath*, 11 F.3d 547, 547 (5th Cir.), *cert. denied*, 114 S. Ct. 2675 (1994). As partners, the two individuals sought to purchase a nightclub in San Antonio from a Texas corporation, K.S. Enterprises, Inc. ("KSE"). *Id.* at 549. Toward this end, they established and wholly owned a Tennessee corporation, Bexar County Enterprises ("BCE"), which purchased forty-nine percent of KSE's stock. *Id.* BCE also acquired an option to purchase the remaining shares when the stock transfer could occur without jeopardizing KSE's permit to sell alcoholic beverages at the nightclub. *Id.*

One facet of the three-year residency requirement forbade the issuance of a permit to any corporation "unless at least 51 percent of the stock of the corporation is owned at all times by citizens who have resided within the state for a period of three years[.]" *Id.*; Alco. Bev. Code § 109.53, *amended by* Act of May 29, 1993, 73d Leg., R.S., ch. 934, § 90, 1993 Tex. Sess. Law Serv. 3954, 3983-84. Thus, the Alcoholic Beverage Commission refused even to conduct background investigations on the owners of BCE because they were not Texas residents. *Cooper*, 11 F.3d at 549. Apparently, the owners filed suit challenging the statute's three-year residency requirement in general, not just the "51 percent rule." *See id.* (listing challenged code provisions). The United States District Court for the Western District of Texas held the three-year residency requirement unconstitutional. *Wilson v. McBeath*, No. A-90-CA-736, 1991 WL 540043, at *11, *aff'd sub nom. Cooper v. McBeath*, 11 F.3d 547 (5th Cir.), *cert. denied*, 114 S. Ct. 2675 (1994).

On appeal to the United States Court of Appeals for the Fifth Circuit, the plaintiffs-appellees argued that the durational residency requirements in the code[2] violated the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, or the Privileges and Immunities Clause, *id.* art. IV, § 2. *Cooper*, 11 F.3d at 549. The Fifth Circuit specifically considered the constitutionality of the durational residency requirement in the "51 percent rule." *Id.*

The Commerce Clause empowers Congress to regulate commerce among the several states. *Id.* at 552 (quoting U.S. Const. art. I, § 8, cl. 3). The court in *Cooper* noted that, in addition to bestowing powers upon Congress, the Commerce Clause "also contains a 'dormant' facet that serves as 'a substantive restriction on permissible state regulation of interstate commerce.'" *Id.* (quoting *Dennis v. Higgins*, 498 U.S. 439, 447 (1991)). The dormant aspect of the Commerce Clause "'prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Id.* (quoting *New Energy Co. v. Limbach*, 486 U.S.

---

[2]The United States Court of Appeals for the Fifth Circuit listed several provisions in the code that contained three-year residency requirements: sections 11.46(a)(11), 11.61(b)(19), 28.04, and 109.53. *Cooper*, 11 F.3d at 549.

269, 273-74 (1988)). The *Cooper* court also noted that the United States Supreme Court has struck down a state's efforts to grant its own residents preferred rights of access over nonresidents to resources located within its borders. *Id.* at 552-53 (citing *Hughes v. Oklahoma*, 441 U.S. 322, 337-38 (1979)).

In *Cooper* the court explained that, when analyzing whether a particular state law codifies economic protectionism and thus violates the Commerce Clause, the United States Supreme Court uses a two-tiered approach. *Id.* at 553.

> Under this framework, state statutes that directly discriminate against interstate commerce, or whose effects favor in-state economic interests at the expense of out-of-staters, are routinely struck down . . . "unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." . . .
>
> When, however, a statute regulates in an evenhanded manner and had only direct[3] effects on interstate commerce, we assess "whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits."

*Id.* (citations omitted) (footnote added).

The court reasoned that the legislature originally did not intend the fifty-one percent requirement to be protectionist because the legislature enacted the statute immediately following the repeal of the Eighteenth Amendment to the United States Constitution in 1933 and, thus, no liquor industry existed in Texas that needed protection. *Id.* However, the court found that the Texas law was not entitled to the lower standard of scrutiny articulated in the second tier of the Supreme Court's approach because the effect was protectionist: the statutory requirements resulted in "overt, in-state favoritism [that] cannot be ignored." *Id.* According to the court, the fifty-one percent requirement created an "impenetrable barrier" to out-of-staters who wished to enter the Texas liquor industry on terms substantially equal to those Texans enjoyed. *Id.*

Thus, the court found that the fifty-one percent requirement was in the category of statutes that the United States Supreme Court routinely strikes down, "'unless the discrimination [against out-of-state residents] is demonstrably justified by a valid factor unrelated to economic protectionism.'" *Id.* (quoting *New Energy Co.*, 486 U.S. at 274). As the court said, "even plainly discriminatory statutes may survive a Commerce Clause challenge if the State can demonstrate that the statutes advance 'a legitimate local purpose

---

[3]For the proposition that a court will apply a lesser standard to review a statute that regulates commerce in an evenhanded manner, the *Cooper* court cited *Brown-Forman Distillers v. New York*, 476 U.S. 573, 579 (1986). In *Brown* the United States Supreme Court said, "[w]hen . . . a statute has only *indirect* effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." (Emphasis added.)

that cannot be adequately served by reasonable nondiscriminatory alternatives.'" *Id.* (quoting *New Energy Co.*, 486 U.S. at 278). The state bears the burden of proof. *Id.*

Before the Fifth Circuit, the State of Texas contended that it established the statutory system for the distribution of alcoholic beverages "'to protect the health, safety, welfare, morals and temperance'" of Texas citizens. *Id.* at 554 (quoting Alco. Bev. Code § 1.03). The court found, however, that "[s]uch boilerplate enabling language hardly explains the State's particular restrictions on out-of-state ownership of various liquor licenses." *Id.* The State next contended that the residency requirements are necessary so that the commission may conduct "an intensely local screening of each applicant's reputation in the community plus a complete, thorough business and financial investigation." *Id.* Moreover, according to the State, the commission's "ability to investigate an out-of-state applicant's reputation and qualifications is severely limited." *Id.* While this ultimate goal may be legitimate, according to the court, the State may not pursue it through a "flat proscription of non-Texans." *Id.*

In addition to demonstrating that a valid factor unrelated to economic protectionism justifies a discriminatory statute, a state must prove that neutral alternatives adequate to protect the interests at stake are unavailable. *Id.* The court believed that, "[i]n this age of split-second communications by means of computer networks, fax machines, and other technological marvels," other neutral, less burdensome options are available that will allow the State sufficiently to check the backgrounds of applicants for alcoholic beverage permits and licenses.[4] *Id.*

Thus, the court concluded that the State failed to demonstrate "'the unavailability of nondiscriminating alternatives adequate to preserve the local interests at stake.'" *Id.* (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 456 (1992)). Indeed, according to the court, "[s]o long as an applicant meets the necessary qualifications and comports himself according to the governing standards, the State would be hard-pressed to offer a justification substantial enough to authorize a wall prohibiting equal competition of non-Texans in the retail liquor business." *Id.*

---

[4]In the words of the United States Court of Appeals for the Fifth Circuit:

> Nonresident liquor license applicants may be required to furnish whatever information the State deems necessary, together with a release to permit rigorous verification checks. The state's penalties for duplicity should apply equally to resident or nonresident permit-holders, as may its provisions requiring the furnishing of bonds by permit holders. Out-of-state applicants may be required to file a consent to suit in Texas courts. Texas law already denies applications to corporations not organized under the laws of Texas, [Alco. Bev. Code § 109.53], and a holder-corporation that violates the State's laws faces revocation of its permit, dissolution of its corporate charter, and other civil and criminal penalties. The entity's employees or supervisors can, of course, be criminally prosecuted regardless where they reside.

*Cooper*, 11 F.3d at 554.

The State of Texas also argued in *Cooper* that the Twenty-first Amendment to the United States Constitution provides the states "carte blanche authority to manage the flow of alcohol within their borders." *Id.* Section 2 of the Twenty-first Amendment provides: "The transportation or importation into any State . . . for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2, *quoted in Cooper*, 11 F.3d at 554-55.

The court acknowledged that, for a time, the United States Supreme Court held the Twenty-first Amendment to grant the states "almost unfettered authority to regulate commerce in intoxicating liquors unconstrained by" dormant Commerce Clause restrictions. *Id.* at 555 (citing, as an example, *State Bd. of Equalization v. Young's Market Co.*, 299 U.S. 59, 62-63 (1936)). More recently, however, the Supreme Court has concluded that the Twenty-first Amendment does not completely remove state regulation of alcoholic beverages from the realm of the Commerce Clause. *Id.* (citing *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 275 (1984)).

To determine whether the Twenty-first Amendment immunizes a particular state statute from invalidation under the Commerce Clause, the state must demonstrate that the interests implicated by its regulation "'are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies.'" *Id.* (quoting *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 714 (1984)). The court found unpersuasive the State's assertions that the State's interest in investigating the background of applicants for alcoholic beverage permits and licenses by discriminating against nonresidents was within the "'core concerns'" of the Twenty-first Amendment. *Id.* Consequently, the court concluded that the residency requirements were subject to the Commerce Clause's nondiscrimination requirement and were, therefore, unconstitutional.[5] *Id.* at 555-56.

During the pendency of the appeal in *Cooper*, the Seventy-third Legislature amended the residency requirements throughout the code to require an applicant for a permit or license to have resided in Texas for one year prior to the date the individual submits the application.[6] *See* Act of May 29, 1993, 73d Leg., R.S., ch. 934, §§ 21, 24,

---

[5]In light of the court's conclusion in *Cooper*, the court did not consider the validity of the residency requirements under the Privileges and Immunities Clause, U.S. Const. art. IV, § 2. *Cooper*, 11 F.3d at 556 n.10.

[6]The *Cooper* court recognized the legislature's actions in relation to its decision that the 1993 amendments to the code did not moot the case. *Id.* at 550-51. The court stated that the enactment of the amendments would not prevent the legislature from restoring the three-year residency requirement if the court in *Cooper* found the requirement constitutional. *Id.* at 551. Furthermore, the court said that, although the one-year residency requirement may lessen the burden placed on out-of-state applicants, the code continues to treat applicants who are not Texas citizens differently from applicants who are Texas residents. *Id.* We assume the court did not rule on the merits of the current one-year residency requirement because the court discussed the one-year residency requirement in the context of its threshold

90, 1993 Tex. Sess. Law Serv. 3954, 3960-61, 3962, 3983-84. The legislature also added section 6.03 to the code, summarizing the history of the code's durational residency requirement and articulating a rationale for continuing the residency requirement, although shortening the period to one year: primarily, to keep organized crime from infiltrating the state's alcoholic beverage industry.[7] *See id.* § 16, at 3957-58 (codified as Alco. Bev.

---

(footnote continued)
conclusion that the amended law did not moot the case; the court did not discuss it in addressing the merits. *See id.* at 550-51.

[7]Section 6.03 of the code provides in pertinent part as follows:

(a) It is the public policy of this state and a purpose of this section to require that, except as provided in Subsection (k) of this section or otherwise in this code, a permit or license may not be issued to a person who was not a citizen of this state for a one-year period preceding the date of the filing of the person's application for a license or permit. In that regard, the legislature makes the findings in Subsections (b) through (j) of this section.

(b) Between 1920 and 1933, the distribution and consumption of alcoholic beverages was prohibited in the United States. While the idealistic motives behind Prohibition were noble, a law enforcement nightmare ensued. Otherwise law-abiding citizens routinely violated the law by buying and consuming alcoholic beverages. The demand for the illegal products created an opportunity for criminal elements to develop a national network for the supply and distribution of alcoholic beverages to the populace. Massive criminal empires were built on illicit profits from these unlawful activities and organized crime openly flourished in Chicago, New York, New Orleans, and other cities.

(c) During Prohibition, the illegal enterprises used their national wholesale distribution networks to exert control over their customers. A common operating procedure was to sell alcoholic beverages to a speakeasy on liberal terms to ensnarl the owner in a web of debt and control with the aim of forcing the owner to engage in other illegal business enterprises on the premises including gambling, prostitution, and the distribution of illegal drugs.

(d) In 1935, when the sale of alcoholic beverages was legalized in this state following the adoption of the Twenty-first Amendment to the United States Constitution, the state was faced with building an entire framework for the distribution of alcoholic beverage products. An important concern was that since criminals owned and controlled the existing illegal alcoholic beverage distribution system, criminals would attempt to own and control the newly legalized industry. In an effort to prevent this situation, comprehensive laws were adopted to ensure that an alcoholic beverage permit or license could be issued only to citizens of the state who had lived in this state for at least three years, thus, long enough to be known by their community and neighbors.

(e) Under the newly designed regulatory scheme, permits and licenses issued by the state did not grant the holder a right. Rather, the holder was granted a privilege that could be challenged at both the county and the state level if the character or qualifications of the applicant were suspect. . . .

(f) The alcoholic beverage laws adopted by the legislature in the 1930s to free the industry from the influence of organized crime have been successful in

Code § 6.03(a) - (g)). Additionally, the legislature voiced some concern about preventing "unfair competition" and "decreased opportunities for small businesses." *See id.* § 16, at 3958 (codified as Alco. Bev. Code § 6.03(g)).

In our opinion, a court would assess the constitutionality of the one-year residency requirement about which you ask using an analysis similar to that which the court used in *Cooper*. Preliminarily, we think the court would ascertain whether the statute fell within the scope of the Twenty-first Amendment and was thereby immunized from invalidation under the Commerce Clause. The court's analysis would center upon whether the state law serves interests "closely related to the powers" the Twenty-first Amendment reserves to the states. *See Cooper*, 11 F.3d at 555. If not, the court would proceed to analyze the statute under the Commerce Clause, using the two-tiered analysis the Supreme Court has set forth. *See id.* at 553.

The court would determine whether the statute directly discriminates against out-of-state residents or whether the statute evenhandedly regulates in-state residents and out-of-state residents. *See id.* If the court finds that the statute is among the former, the state must demonstrate to the court's satisfaction that a valid factor unrelated to economic protectionism justifies the discrimination and that an adequate neutral alternative is unavailable. *See id.* at 554. On the other hand, if the court finds that the statute is among the latter, the court must assess whether the statute furthers a legitimate state interest and

---

(footnote continued)

this state. The alcoholic beverage industry in this state is not dominated by organized crime. However, the legislature does find that organized crime continues to be a threat that should never be allowed to establish itself in the alcoholic beverage industry in this state.

(g) To accommodate the interests of the consuming public, the expansion of popular nationwide businesses, and the increasing state interest in tourism, and at the same time to guard against the threats of organized crime, unfair competition, and decreased opportunities for small businesses, the legislature finds that there is no longer need for the three-year residency requirements with regard to those segments of the industry that sell alcoholic beverages to the ultimate consumer only. The legislature finds that it is desirable to retain a one-year residency requirement for businesses that sell to the consumer packaged liquor and fortified wine capable of being used to supply legal or illegal bars and clubs. The legislature also finds it reasonable, desirable, and in the best interests of the state to provide a one-year residency requirement for businesses engaged in the wholesale distribution of beer, malt liquor, or wine or in the manufacture and distribution of distilled spirits and fortified wines at both the wholesale and the retail levels where those beverages, in unopened containers, are sold to mixed beverage permittees and private club registration permittees as well as to the general public. Adequate protection is deemed to be provided by controlling those sources of supply for distilled spirits and fortified wines.

whether the burden on interstate commerce clearly exceeds the local benefits.[8] *See id.* at 553.

All of the issues involved in a court's analysis of the constitutionality of the one-year residency requirement in the Alcoholic Beverage Code involve the resolution of fact questions. The resolution of fact-based questions is inappropriate to the opinion process. *E.g.*, Attorney General Opinions DM-98 (1992) at 3; H-56 (1973) at 3; M-187 (1968) at 3; O-2911 (1940) at 2.

## S U M M A R Y

All of the issues involved in a court's analysis of the constitutionality of the Alcoholic Beverage Code's one-year residency requirement involve the resolution of fact questions.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General

---

[8]A court also might consider whether the statute violates the Privileges and Immunities Clause, U.S. Const. art. IV, § 2. *See supra* note 5.